## SMITH et al. v. ZWEIFEL et al.

No. 26464.   Feb. 18, 1936.

Butler & Brown, for petitioners.

Mac Q. Williamson, Atty. Gen., Houston W. Reeves, Asst. Atty. Gen., and Frank Ertell, for respondents.

PHELPS, J.   On August 1, 1934, the respondent (claimant in the State Industrial Commission) suffered a sunstroke or heatstroke while employed by petitioner Smith as a carpenter in the erection of a school-house. The commission made an award in his favor for temporary total disability, for the review of which the employer and insurance carrier have instituted this action.

Petitioners' first contention is that there is no evidence to sustain the finding that the injury arose out of the employment. The evidence on that issue will be more

114

readily understood if we first bring to mind the rule applicable to the particular question involved, that question being: Under what circumstances does sunstroke arise out of the employment? In Stanolind Pipe Line Co. v. Davis, 173 Okla. 190, 47 P. (2d) 163, the former leading decisions of this court on that subject were digested and the rule announced that the injury is considered as arising out of the employment where it is sustained by reason of the employee's being placed, by the nature of his work, in a position or under circumstances subjecting him to a greater hazard of injury by sunstroke than other people in the same vicinity who are not engaged in such work; in other words, where the employment increases the danger of being injured by sunstroke. Therefore the scope of our inquiry has become considerably narrowed, and we approach the narration of facts with the purpose of our investigation focused down to the one point of determining whether the following circumstances, if believed by the commission, constitute any evidence that the conditions under which the claimant was working increased the risk of sunstroke or heatstroke:

The stroke occurred at 1:45 p. m. on a day when the temperature was above 106 degrees. The foundation of the schoolhouse had been completed around the sides, and a brick wall erected thereon to a height of about three feet, the dimensions of the rectangle being 80 by 96 feet. The claimant and other workmen were carrying heavy lumber from a lumber pile a short distance south of the south wall, over the brick wall and into the enclosure, to make forms into which concrete was being poured for the cross-foundations inside the rectangle. He and another had just carried an extraordinarily heavy load and were at the northeast corner, inside the wall, when he collapsed. The ground was rough and uneven, with several ditches. It was also necessary to climb the wall, with these loads, and then pick the way carefully inside to avoid tripping over ditches or other obstacles, or avoid destruction of guide lines which other workmen had placed near the ground. The enclosure was filled with two kinds of dust, one from the natural earth and one from the unloading of sacks of cement at the mixer, located just outside the west wall. The record does not reveal whether this cement mixer was run by power, thus possibly increasing the heat. The ground within the enclosure thinly covered a bed of slate rock, and the rock itself was exposed in places, increasing the heat reflection.

Returning to the south side of the structure, another brick school building called the "old schoolhouse," two stories high, was situated south and west thereof. The lumber pile mentioned above was also on the south side. There was a tool house, and also a cement house, a short distance south of the same wall. In addition, there was a grove of trees along the entire south side of the ground, and large boulders were scattered over the entire premises, not restricted to the south side. On the east side there were also trees, described as a "heavy grove." Thus the situation which the commission was warranted in believing to exist was that two sides of the building site were such as to increase the heat, that the cement mixer on the third side and the boulders strewn over the whole probably added thereto, that the wall itself (though not high) contributed its share toward lessening the free circulation of air, and that the claimant was in a still hotter location by being inside the wall, in the midst of the dust which he described as causing hard breathing, and working on a semi-rock foundation itself; that thereby the heat was made more intense than at other places in the same general community. In addition, the owner of a filling station and store, who conducted his business some 100 to 160 feet west of the west wall, testified that the old schoolhouse and the timber, with the other factors mentioned above, broke the breeze and thus the location was hotter than other locations in that vicinity. This was of course a question of fact, and when we consider the combined and cumulative effect of all of the foregoing heat-contributing causes in connection with the type of work which claimant was performing, it is obvious that such was some evidence of the fact in dispute. Therefore, under the rule that where there is any competent evidence to sustain the finding of the State Industrial Commission on a controverted question of fact, said finding will not be disturbed on review, we cannot reverse the award on this ground.

The second proposition of petitioners is that there is no evidence to support the commission's finding that claimant was and had been continuously disabled since the date of the accident. This contention is in part correct. We find no competent evidence in the record that claimant's temporary total disability continued later than November 15, 1934. The award covered the period from August 1, 1934 (date of the accident), to June 3, 1935.

The evidence on this issue is restricted to the testimony of claimant himself and

one physician. The claimant when asked, "How has your health been since?" answered, "Well, my health isn't as good as it was before I had this stroke"; and also testified that he never did go back on that job and that he has not "done anything" since the date of the accident. He nowhere testified that he had been unable to work. The following is from the testimony of the physician:

"By the Court: In your opinion, Doctor, is Mr. Zweifel able at this time to do manual labor? Or carpenter work? A. I haven't given Mr. Zweifel an examination since November the 15th. By the Court: But he wasn't on November the 15th? A. No, sir."

It is apparent that the physician avoided a direct answer concerning the claimant's condition after November 15, 1934, because, as he said, he had not examined him since that date. The record is devoid of any evidence that claimant was still totally disabled on the date of that hearing, March 18, 1935.

That hearing terminated with a remark of the commission that the doctor had not examined claimant since the preceding November 15th, and that the attorney for the claimant should have him examined that day. From the remarks contained in the record at the close of that hearing, we expected to find further medical testimony in the second hearing, which was conducted May 27, 1935. However, no such evidence was introduced at that hearing.

We know of no presumption that temporary disability will continue until the contrary is shown. Whatever period of continued disability the claimant may have been able to prove, his proof failed as to that portion of the award for the period of time after November 15, 1934.

The award is affirmed for that period of time from August 1, 1934, less the five days' waiting period, to and including November 15, 1934; and for the period of time following the latter date the award is vacated for lack of evidence and the cause remanded to the State Industrial Commission for further hearing of evidence on that issue, or for further proceedings not inconsistent with the views herein expressed

McNEILL, C. J., and RILEY, CORN, and GIBSON, JJ., concur.