H. J. HAPPEL & Admiral Paving Company and Hartford Accident & Indemnity Company, Petitioners,

v.

John David Tilton BELL and State Industrial Court, Respondents.

No. 38807.

Supreme Court of Oklahoma.

May 10, 1960.

Covington, Donovan & Gibbon, Tulsa, for petitioners.

Wilkerson & Wilkerson, Pryor, for John David Tilton Bell, respondent.

Mac Q. Williamson, Atty. Gen., for State Industrial Court, respondent.

BERRY, Justice.

Claimant sought to recover compensation for disability sustained as a result of an accidental injury on June 3, 1958, consisting of a sunstroke.

Petitioners challenge, as unsupported by credible proof, the finding of the State Industrial Court that claimant's thermic injury arose out of and in the course of his employment, within the meaning of the Workmen's Compensation Law, 85 O.S. 1951 § 1 et seq. It is argued this Court should weigh the evidence and make an independent determination of the fact issue, which, petitioners urge, constitutes a jurisdictional question. In this we cannot join.

■ Whether an injury arose out of and in the course of employment is an issue of fact to be resolved by the State Industrial Court under the facts of each particular case. A finding made by that tribunal upon such matter is conclusive and binding on this Court, and will not be disturbed on review where there is any competent testimony reasonably tending to support it. City of Holdenville v. Bise, Okl., 341 P.2d 588; Standish Pipe Line Co. v. Johnson, 197 Okl. 238, 169 P.2d 1018; LeFlore-Poteau Coal Co. v. Thurston, 184 Okl. 178, 86 P.2d 284.

Claimant was engaged in the construction of a four-lane section of State Highway No. 20 through Hominy, Oklahoma. The crew, consisting of several workmen moving in a westerly direction, was laying concrete over the southern portion of the roadway, 22–24 feet wide. Approximately twenty to thirty minutes later curbing was poured along the south side of the slab. Claimant worked as a curb finisher. He performed the duties of his job in a "bent-over" position so that he could reach with a "short-handled" trowel the top surface as well as the inside wall of the curb which lay below the ground level. His feet remained on the adjacent dirt, off the paved portion. The day was hot and humid, temperature ranging from 90° to 91° F. Wind velocity was low. The crew worked continuously at a rapid tempo. Claimant's job required constant physical efforts, as the curb had to be finished before concrete became solidified. The process of hardening, evidence disclosed, takes place faster in hot than in cold weather. Of necessity claimant also had to keep pace

with the slab layers. At an opportune moment he took thirty minutes off for lunch. Later in the afternoon he managed to remain in the shade for a few minutes and smoked a cigarette. Close to 5:00 p. m. he collapsed.

When brought to a physician, his temperature rose to 107° F (by axillary method). After an hour it was reduced to about 101° F, owing to the application of ice water enemas. A neuro-surgeon called from Tulsa for consultation diagnosed the condition as a sunstroke (after eliminating the possibility of inter-cranial hemorrhage).

At the point where claimant collapsed, the roadway was approximately 44–48 feet wide. There was a sidewalk and a small park area between the highway and a building to the north. Directly to the south there were some trees and a residential home, approximately 35–40 feet away from the roadway.

A civil engineer, familiar with highway construction work, testified for the claimant. He related that a chemical reaction, known as hydration process, takes place in the course of setting wet concrete. It creates an appreciable heat increase. A lay witness who was working with claimant on the day of the accident explained that such temperature rise may be felt through rubber boots while wading in wet concrete. The engineer further stated that water, which comes up to the surface when concrete is laid, has the property of reflecting solar rays and heat. It was further shown that the position of the sun on the afternoon in question was such that its rays reflected directly at claimant, then working at the south edge of the roadway.

Medical reports of three physicians were admitted in evidence. One also testified by deposition. The diagnosis of injury by sunstroke was concurred in by all of them.

Environmental and climatic conditions present at the location of work, the doctors agreed, coupled with claimant's prolonged, continuous and rapid physical exertion while in a position which was apt to interfere with the circulation of blood to his

brain, as well as to expose a large area of his body to more direct solar rays, were the precipitating factors causing claimant's heat stroke.

██ If the place of employee's work, by reason of its location, nature and climatic conditions, would likely subject him to the danger of heat prostration (heat exhaustion, overheating or heat exertion), or if the hazard of such thermic injury is naturally connected with and reasonably incidental to his employment as distinguished from ordinary risk to which the general public is exposed merely from climatic factors, the disability produced by a thermic injury is compensable. Virgil Graham Construction Company v. Nelson, Okl., 322 P.2d 651; Garfield County v. Best, Okl., 289 P.2d 677; L. C. Kimsey Heating & Plumbing Co. v. House, 152 Okl. 200, 4 P.2d 59; Sheenan Pipe Line Co. v. Cruncleton, 163 Okl. 205, 22 P.2d 112; Smith v. Zweifel, 176 Okl. 113, 54 P.2d 649; E. G. Nicholas Const. Co. v. State Industrial Commission, Okl., 262 P.2d 893.

In Smith v. Zweifel, 176 Okl. 113, 54 P.2d 649, we stated:

"Injury by sunstroke is considered as arising out of the employment, within the meaning of the Workmen's Compensation Act, where it is sustained by reason of the employee's being placed, by the nature of his work, in a position or under circumstances subjecting him to a greater risk of such injury than other people in the same vicinity who are not engaged in such work."

Petitioners rely on the decision in McKeever Drilling Co. v. Egbert, 167 Okl. 149, 28 P.2d 579. In the cited case no causal connection was established between the heat stroke and the conditions, location and nature of claimant's employment. In the proceeding under review the connection is amply shown by medical evidence. This distinguishes the case at bar from the other. Garfield County v. Best, supra.

There is competent evidence reasonably tending to show that the sunstroke sustained by claimant arose out of his employment, which subjected him to a greater risk of thermic injury than that to which other persons, not engaged in such work, were exposed from mere climatic conditions.

Award sustained.

DAVISON, C. J., WILLIAMS, V. C. J., and HALLEY, JOHNSON, BLACKBIRD, JACKSON and IRWIN, JJ., concur.