620

GREEN, Judge.

The act of June 19, 1934 (31 USCA §§ 311a, 316a, 316b, 405a, 448–448e, 734a, 734b; 26 USCA § 904a), known as the Silver Purchase Act of that date, provided for the purchase by the government of silver, and among other things amended Schedule A of title 8 of the Revenue Act of 1926 (26 USCA § 904a), relating to stamp taxes by adding thereto a provision imposing a tax on "transfers of any interest in silver bullion" if the price exceeds cost thereof and allowed expenses, the rate of the tax being fixed at 50 per centum of the amount of such excess. The statute further provided that the payment of the tax should be made by affixing stamps in value equal to the tax on the transfer to a memorandum made and delivered by the transferor to the transferee. The term "transfer" was defined to mean a sale, agreement of sale, or agreement to sell.

On May 3, 1934, agents of the plaintiff bought in several transactions 500,000 ounces of silver bullion, and this silver was sold by plaintiff during the period from May 23, 1934, to May 29, 1934, inclusive. On these sales the plaintiff realized (after deducting allowed expenses) a profit of $8,621.96 of which he made the return required by law and paid a tax in the sum of $4,311. In due time and in proper form the plaintiff filed a claim for refund of this amount based upon the alleged invalidity of the tax.

The plaintiff contends that in the instant case the tax is invalid and unconstitutional for the reason that it was retroactively imposed. This constitutes the sole issue in the case.

The mere fact that a taxing statute has retroactive effect is not sufficient

Bernhard Knollenberg, of New York City (Herbert Brownell, Jr., and Lord, Day & Lord, all of New York City, on the brief), for plaintiff.

George H. Foster, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen. (Alanson W. Willcox, of New York City, and Loren P. Oakes, of Chicago, Ill., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

by itself and alone to establish its invalidity. This is shown by numerous decisions cited by counsel for defendant, none of which, however, as we think, are parallel as to facts with the case now before us.

Counsel for plaintiff also cite many cases in which a tax imposed retroactively was held to be invalid, but in nearly all of these cases the decision was based upon facts in the case then presented to the court, and no general rule was laid down. The plaintiff relies largely upon the decisions in Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081; Untermyer v. Anderson, 276 U. S. 440, 48 S. Ct. 353, 72 L. Ed. 645, and Milliken v. United States, 283 U. S. 15, 51 S. Ct. 324, 326, 75 L. Ed. 809.

We think, putting these decisions together, it may be said that they hold in effect that if at the time a citizen enters into a transaction it is not taxable and he has no reason to believe or expect a tax will in the future be imposed by reason of it, a valid tax thereon cannot be laid by a subsequent statute. In the case of Milliken v. United States, supra, it was said that in Nichols v. Coolidge, supra, and Untermyer v. Anderson, supra, the basis of the decision was "that the nature and amount of the tax burden imposed could not have been understood and foreseen by the taxpayer at the time of the particular voluntary act which was made the occasion of the tax," and by reason of this fact, in both of these cases, the tax was held invalid.

On behalf of the defendant, it is contended that these decisions have no application to the case at bar for several reasons which we will next consider.

It is said that the tax was necessary in order to enforce the Silver Purchase Act. A similar argument was made in support of the statute in the Untermyer Case, supra, and rejected by the majority of the court. We do not think it necessary to discuss the principles upon which that decision is based, as we are clear that in the instant case the tax served no purpose except to add to the revenue of the government, and the argument of defendant rests on a mistaken premise of fact.

It may be conceded that it was to the interest of the government to prevent the price of silver which was intended to be bought from being forced up by speculative purchases. But the application of the tax could have only a negligible effect in this respect. It is a matter of common knowledge that the United States produces only a comparatively small portion of the world's stock of silver. The silver required to be purchased must necessarily be obtained from abroad, and its price would be determined by what foreign owners thought they could get for it. Counsel for defendant call attention to the fact that after the passage of the act, purchases of silver on the New York market dropped off to an inconsiderable amount, and it is said that this showed the act was effective. It was—in the way of stopping speculation in silver on the New York market—but it had, of course, no effect on speculation in other markets such as those of Canada and Great Britain. Outside of the United States speculation would still continue, and it would be very easy for an American citizen to make his purchases in Canada. The committee report states in effect that the purpose of the bill was to equitably reimburse the government for the increase which its action might bring to the price of silver. It might do this to some small extent, but this is purely a revenue proposition.

What we have said above applies to purchases and sales of silver after the passage of the act and when the government had begun action thereunder. Then, as we have said above, if one contemplating the purchase of silver knew that a heavy tax would be imposed on any gain which resulted therefrom, he would be quite likely to refrain from making the purchase in this country. But when the purchase was made before the silver purchase law was proposed, as it was in the instant case, we are at a loss to understand how putting a tax on the profits which might be made from subsequent sales could by any possibility affect the workings of the act. The purchase had already been made. If it or any number of purchases made before the act was contemplated had any effect upon the price of silver, putting a tax on the sale would not change the result. We may concede, as we have above, that the tax might have some effect in the way of stopping future purchases of silver in this country but after the purchase has been made, a tax levied upon

the profits therefrom can serve no purpose but to bring some revenue into the Treasury. The market price of silver would remain the same to the government or any other party, and the enforcement of the act would in no way be assisted by the application of the tax under the circumstances presented by the plaintiff's case.

■ It is also urged on behalf of the defendant that the retroactive feature of the tax must be sustained as an incident to the exercise of the monetary power of Congress. The purchase of silver may be so sustained, but we think it has been shown above that in making the tax apply to purchases made prior to the enactment of the statute nothing was done which in any way assisted in carrying out the objects of the Silver Purchase Act. The particular provision in controversy is therefore not an exercise of the monetary power of the government, but of its taxing power, and this contention also must be overruled.

■ It is also argued that in its practical effect the tax is one upon income, and that being an income tax, it can be imposed retroactively.

At the outset it will be observed that the tax is specifically designated as a stamp tax, is paid by means of stamps, the government itself has administered the act as a stamp tax, and a Treasury decision has been promulgated to the effect that the amount of this tax was deductible in determining the net income of the taxpayer. It is true that the amount of the tax is measured by the profits made, but we do not think this makes it an income tax. So far as we are aware, the precise question now being considered has not been ruled upon in any of the decisions of the federal courts, but in many cases it has been held in effect that the measure of a tax does not determine its nature. This tax is outside of the income tax and in addition thereto. It is plain that Congress did not regard it as an income tax. When Congress considered the provision in question to be a stamp tax and the government officials so treated it, how could the taxpayer be expected to regard it as an income tax?

It has often been held that the income tax may be levied retroactively, at least so as to include all of the year during which the taxing act became a law. But there is an important difference between the income tax and a tax of the nature involved in the instant case. The income tax is a general tax on all income. It would make no difference to the taxpayer whether he knew in advance that it was to be levied; he would continue his business transactions in the same manner in any event, for it is a continuing tax, usually divided for convenience in collection into periods of one year. But here we have a tax that is levied upon a particular transaction or transactions. It is not an amendment to the income tax provisions, but would be collected if they were all repealed. If the taxpayer had been forewarned, the situation would have been very different, for he could then take his choice. He could avoid the risk of loss on the sale and payment of a heavy tax if there was a profit simply by not entering into the transaction, but after he had made the purchase, his status was fixed, and he was caught by a taxing statute which he had no reason to anticipate.

Counsel for defendant cite some cases in which it has been held that where an excise tax exists with reference to a particular transaction the tax may be increased subsequent thereto and made to retroactively apply to the whole of the current year. Updike v. United States (C. C. A.) 8 F.(2d) 913, 916, is cited in support of defendant's position and it is assumed that an excess profits tax is not an income tax for which no authority is found in the opinion rendered thereon. We have no occasion to pass on the question thus raised, for whether the excess profits tax be considered an income or an excise tax the rule would be the same, and for the same reason, as stated in the opinion, namely, that it "applied to all corporate operations within that calendar year." The opinion merely emphasizes the difference in the nature of the tax involved in the instant case which applies only to a certain kind of transactions and a tax like the income tax or excess profits tax which applies to all business transactions during the current year.

■ The fact that the President's message which suggested levying the tax was delivered before the sales were made does not prevent the application of the rule.

624

Plaintiff bought the silver presumably for sale, and when the provision for the tax was passed by Congress, it imposed a burden upon him which he could not escape if the act was valid. The act which caused the tax to be applied was the act of purchase. We are of the opinion that the case clearly comes under the rule as stated in Milliken v. United States, supra, in that the nature and amount of the tax burden imposed could not have been understood and foreseen by the taxpayer at the time he made the purchases, and we are therefore constrained to hold that the tax was invalid.

In so doing, we are not unmindful of the rule that acts of Congress should not be held invalid except where there is no doubt that they are unconstitutional, but we encounter no doubt in making the decision. It should, perhaps, be noted that our conclusion can affect only a very few cases so far as the silver act is concerned. A contrary decision, however, if ultimately sustained, would have a very far-reaching effect in enabling similar retroactive taxes to be imposed on practically every kind of business transaction which involved a purchase and sale.

Judgment will be rendered in favor of plaintiff as prayed in his petition.