LOCAL UNION 1106, INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, AFL-CIO v GOODWILL INDUSTRIES OF
MUSKEGON COUNTY, INC

Docket No. 93390. Submitted April 7, 1987, at Grand Rapids. Decided
August 18, 1987.

Local Union 1106, International Brotherhood of Electrical Work-
ers, AFL-CIO, filed a petition with the Michigan Employment
Relations Commission, seeking an election for the purpose of
certification of petitioner as the collective bargaining represen-
tative of the janitors and laborers employed by Westport Jani-
torial Service, a nonprofit organization which is operated by
Goodwill Industries of Muskegon County, Inc., as part of its
rehabilitation program. Goodwill responded that the workers at
Westport were not employees within the meaning of the Michi-
gan labor mediation act, since the primary objective of the
program in which they were working was rehabilitation and
placement in competitive employment. The commission, while
recognizing that the relationship between Goodwill and its
client-employees at Westport was unlike the traditional com-
petitive employment relationship, nevertheless held that an
employer/employee relationship within the meaning of the
labor mediation act was not precluded by the rehabilitative
relationship, concluded that the "clients" were "employees"
within the meaning of that act, and ordered that a bargaining
representative election among the janitors and laborers em-
ployed by Westport be held. Goodwill appealed.

The Court of Appeals held:

While handicapped or disabled workers working in a Michi-
gan workhouse operation such as that operated by respondent
are not, as a matter of law, precluded from being employees
within the meaning of the labor mediation act, they may be
found not to be, in fact, employees within the meaning of the
act where the guiding purpose of the workshop is rehabilitative

REFERENCES

Am Jur 2d, Labor and Labor Relations §§ 2067-2070, 2424, 2662.
Validity of individual employment contract term which contains
provisions that employee will perform if physically able, if health
permits or the like. 7 ALR3d 898.

rather than typically industrial. Since the commission made no finding as to the guiding purpose of respondent's janitorial operation, the matter must be remanded for a finding on that issue.

Remanded.

LABOR RELATIONS — HANDICAPPED WORKERS — EMPLOYEES — COLLECTIVE BARGAINING UNITS — LABOR MEDIATION ACT.

Handicapped or disabled workers who are employed in a Michigan workshop operation are not, as a matter of law, precluded from being held to be employees within the meaning of the Michigan labor mediation act; however, such workers may on a case-by-case basis be found not to be employees within the meaning of the labor mediation act where the guiding purpose of the workshop is rehabilitative rather than typically industrial (MCL 423.2[e]; MSA 17.454[2][e]).

*Varnum, Riddering, Schmidt & Howlett* (by *Paul M. Kara* and *Perrin Rynders*), for respondent.

Before: WEAVER, P.J., and D. E. HOLBROOK, JR., and T. GILLESPIE,* JJ.

PER CURIAM. Respondent Goodwill Industries of Muskegon County, Inc., appeals as of right from a decision of the Michigan Employment Relations Commission, Labor Relations Division. We remand for clarification of the commission's findings of fact.

I

In September of 1985, Local Union 1106, International Brotherhood of Electrical Workers filed a petition with the commission. The petition asserted that thirty percent or more of the full- and part-time janitors and laborers employed by Westport Janitorial Service wished to be represented for purposes of collective bargaining and sought an election and certification of a union representative

* Circuit judge, sitting on the Court of Appeals by assignment.

pursuant to MCL 423.27; MSA 17.454(29).[1] Goodwill responded that the workers were not "employees" within the meaning of the Michigan labor mediation act, since the primary objective of the program in which they were working was rehabilitation and placement in competitive employment.

The parties stipulated that Westport, a nonprofit organization, is part of Goodwill's program to prepare "clients . . . for competitive employment elsewhere by rehabilitating them in regard to mental, physical, emotional and social disabilities." Before qualifying for the Westport program, the "clients" receive some type of rehabilitation training; they are referred to the Westport program by public schools, Michigan Rehabilitation, community mental health offices, and Job Training Partnership Act programs.

Prior to assuming their duties as Westport workers, the clients also undergo an additional twelve-week state-paid training program. After their training, however, the clients are supervised by Goodwill staff and are paid a minimum wage and perform labor and janitorial services pursuant to Goodwill's contracts with churches, public schools, state buildings, and commercial (e.g. doctors') offices. Goodwill reports in its budget any Westport revenues in the same manner as it reports other

---

[1] MCL 423.27; MSA 17.454(29) provides in pertinent part:

> When a petition is filed . . . [b]y an employee or group of employees, or . . . [a] labor organization acting in their behalf, alleging that 30% or more of the employees within a unit . . . wish to be represented for collective bargaining and that their employer declines to recognize their representative . . ., the commission shall investigate the petition and . . . provide an appropriate hearing after due notice. If the commission finds upon the record of the hearing that a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof.

sources of revenue such as United Way contributions.

As part of the Westport rehabilitation program, Goodwill job placement officers, professional counselors and work adjustment counselors evaluate the clients and prepare reports on their physiological, psychological and psychiatric condition. The clients are allowed to stay in the program as long as required by their individual needs, but may be removed from the program or otherwise disciplined if necessary.

Following a hearing held in December of 1985, the commission in its opinion and order recognized that the relationship between Goodwill and its clients was unlike that of traditional competitive employment, since the relationship existed to serve the clients. However, the commission further stated that the existence of an employer/employee relationship was not precluded by a rehabilitative relationship and concluded that the "clients" were "employees" within the meaning of § 2(e) of the Michigan labor mediation act, MCL 423.2(e); MSA 17.454(2)(e).[2] The commission then ordered a vote among Westport's full- and part-time janitors and

---

[2] The Michigan labor mediation act, MCL 423.2(e); MSA 17.454(2)(e), provides the following definition of "employee":

> "Employee" includes any employee, and shall not be limited to the employees of a particular employer, unless the act explicitly provides otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any act which is illegal hereunder, and who has not obtained any other regular and substantially equivalent employment, but shall not include any individual employed as an agricultural laborer, or in the domestic service of any family or any person at his home, or any individual employed by his parent or spouse, or any individual employed as an executive or supervisor, or any individual employed by an employer subject to the railway labor act, as amended, or by any other person who is not an employer as defined in this act.

laborers. From this decision Goodwill appeals as of right. Goodwill's motion to stay the commission's order was denied by this Court, as was its motion for rehearing.

II

The Michigan labor mediation act, MCL 423.1 *et seq.*; MSA 17.454(1) *et seq.*, allows employees to organize, join or assist in organizing in order to collectively negotiate or bargain. MCL 423.8; MSA 17.454(8). Collective bargaining representatives are designated or selected by the majority of employees of a collective bargaining unit. MCL 423.26; MSA 17.454(28). An employer has an affirmative duty to bargain collectively with its employees' representative. MCL 423.30; MSA 17.454(32).

We find that the statutory language of MCL 423.2(e); MSA 17.454(2)(e) provides an ambiguous definition of "employee." Therefore we turn for guidance to the federal courts and to the National Labor Relations Act, 29 USC 151 *et seq.*, after which the Michigan act was modeled. *Rockwell v Crestwood School Dist,* 393 Mich 616, 635-636; 227 NW2d 736 (1975), reh den 394 Mich 944 (1975), motion to set aside judgment den 399 Mich 1045 (1977), app dis 427 US 901; 96 S Ct 3184; 49 L Ed 2d 1195 (1976).

The NLRA's definition of "employee" is almost identical to Michigan's definition. See 29 USC 152. However, the federal courts have held that handicapped workers in a workshop setting are not excluded as a matter of law from being "employees" unless the "guiding purpose" of the workshop operation is "rehabilitative" as opposed to "typically industrial." *Cincinnati Ass'n for the Blind v NLRB,* 672 F2d 567, 571 (CA 6, 1982), cert den 459 US 835; 103 S Ct 78; 74 L Ed 2d 75 (1982). In

conformity with the practice of the NLRB, a determination that the "guiding purpose" is "rehabilitative" or "typically industrial" is made on a case-by-case basis. *Id.* Where the "guiding purpose" is "rehabilitative" (i.e., primarily oriented toward providing social services to workers), the workers are not "employees" within the NLRA's definition. However, where the "guiding purpose" is "typically industrial" (i.e., where the rehabilitative purpose is subordinate to routine business considerations), the workers are "employees." *Id.* at 571-572.

Common factors noted by the NLRB and the federal courts in finding the "guiding purpose" of workshop operations to be "typically industrial" include: whether the workshop was conducted for profit, whether workers are suspended or terminated for poor job performance, and whether workers are compensated based on work performance. A common factor in finding the purpose to be "rehabilitative" is whether placement of a worker in the workshop operation is temporary, as a means of training, pending placement in private industry. The focus is on factors which indicate that the workshop is operating to benefit the "workers," as opposed to such benefit being incidental. *Id.; NLRB v Lighthouse for the Blind of Houston,* 696 F2d 399 (CA 5, 1983), reh den 703 F2d 557 (CA 5, 1983); *Key Opportunities, Inc,* 265 NLRB 1371 (1982); *Goodwill Industries of Southern California,* 231 NLRB 536 (1977).

The goal of statutory construction is to identify and give effect to the intent of the Legislature. *Ballenger v Cahalan,* 145 Mich App 811, 822; 378 NW2d 607 (1985). We believe that the above-described case-by-case approach, adopted by the NLRB and the federal courts, effectuates the legislative intent of the Michigan labor mediation act. Therefore we hold that handicapped or disabled workers

in a Michigan workshop operation are not excluded as a matter of law from the Michigan labor mediation act's definition of "employee," but that they may be excluded if, on a case-by-case finding, the "guiding purpose" of the workshop is "rehabilitative" as opposed to "typically industrial."[3]

Although the commission correctly held that the existence of an employer/employee relationship does not necessarily preclude a rehabilitative relationship, it made no finding on the critical question of Westport's "guiding purpose." Therefore we remand to the commission for a finding on this issue.

Remanded. We do not retain jurisdiction.

[3] This conclusion is consistent with the approach utilized by Michigan courts in determining whether workers are "employees" under the public employment relations act, MCL 423.201 *et seq.*; MSA 17.455(1) *et seq.* See *Regents of the University of Michigan v Employment Relations Comm,* 389 Mich 96, 107-110; 204 NW2d 218 (1973); *Prisoners' Labor Union v Dep't of Corrections,* 61 Mich App 328; 232 NW2d 699 (1975), lv den 394 Mich 843 (1975). Although neither of these cases involved handicapped employees in a workshop setting, they did focus on whether the employer/employee relationship was a traditional one in determining whether the workers involved were "employees."