LOCAL UNION 1106, INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, AFL-CIO v GOODWILL INDUSTRIES OF
MUSKEGON COUNTY, INC (AFTER REMAND)

Docket No. 104195. Submitted August 18, 1988, at Grand Rapids.
Decided February 14, 1989.

Local Union 1106, International Brotherhood of Electrical Work-
ers, AFL-CIO, filed a petition with the Michigan Employment
Relations Commission, seeking an election for the purpose of
certification of petitioner as the collective bargaining represen-
tative of the janitors and laborers employed by Westport Jani-
torial Service, a nonprofit organization which is operated by
Goodwill Industries of Muskegon County, Inc., as part of its
rehabilitation program. Goodwill responded that the workers at
Westport were not employees within the meaning of the Michi-
gan labor mediation act, since the primary objective of the
program in which they were working was rehabilitation and
placement in competitive employment. The MERC, while recog-
nizing that the relationship between Goodwill and its client-
employees at Westport was unlike the traditional competitive
employment relationship, nevertheless held that an employer/
employee relationship within the meaning of the labor media-
tion act was not precluded by the rehabilitative relationship,
concluded that the "clients" were "employees" within the
meaning of that act, and ordered that a bargaining representa-
tive election among the janitors and laborers employed by
Westport be held. Goodwill appealed. The Court of Appeals
held that, while, as a matter of law, workers in a workshop
operation are not precluded from being employees within the
meaning of the labor mediation act, they may be found not to
be employees within the meaning of that act where the guiding
purpose of the workshop is rehabilitative rather than typically
industrial. The Court of Appeals remanded to the MERC with
instructions that the MERC find the guiding purpose of the
Westport operation. On remand, the MERC held that, while

REFERENCES

Am Jur 2d, Labor and Labor Relations §§ 674 *et seq.*

See Index to Annotations under Collective Bargaining; Labor and
Employment.

Westport had certain characteristics typical only of a workshop operation, Westport resembled "traditional employment in many ways which may not be characteristic of all workshop operations." Because some aspects of Westport's operation resembled a traditional for-profit business enterprise, the MERC found the individuals employed in the Westport operation to be employees within the meaning of the labor mediation act and again ordered a representative election. Goodwill appealed.

The Court of Appeals *held:*

While findings of fact by the MERC are conclusive if supported by competent, material and substantial evidence on the record as a whole, the Court of Appeals may review questions of law. The MERC misapplied the facts to the law in that it believed that, since this operation had certain characteristics which caused it to resemble a for-profit business enterprise, the guiding purpose of the operation was thereby typically industrial rather than rehabilitative in nature. The MERC improperly relied on the existence of some characteristics normal to a typical industrial operation to preclude a finding that the guiding principal of this operation was rehabilitative in nature.

Reversed.

LABOR RELATIONS — HANDICAPPED WORKERS — EMPLOYEES — COLLECTIVE BARGAINING UNITS — LABOR MEDIATION ACT.

Handicapped or disabled workers who are employed in a Michigan workshop operation may, on a case-by-case basis, be found not to be employees within the meaning of the labor mediation act where the guiding purpose of the workshop is rehabilitative rather than typically industrial; if the guiding purpose of a workshop is rehabilitative, the operation of the workshop will not be rendered industrial in nature merely because the operation closely resembles a traditional for-profit business enterprise (MCL 423.2[e]; MSA 17.454[2][e]).

*Varnum, Riddering, Schmidt & Howlett* (by *Paul M. Kara* and *Perrin Rynders*), for respondent.

Amicus Curiae:

*Culver, Lague & McNally* (by *Michael W. Irish*), and *Charles I. Cohen*, for Goodwill Industries of America, Inc.

*Clary, Nantz, Wood, Hoffius, Rankin & Cooper*

(by *Robert C. Stone* and *Douglas W. Van Essen*), for Michigan Association of Rehabilitation Facilities.

Before: MacKenzie, P.J., and McDonald and R. E. Robinson,* JJ.

Per Curiam. Respondent appeals as of right from a supplemental decision and order of the Michigan Employment Relations Commission holding that individuals employed in respondent's sheltered workshop operation known as Westport Janitorial Service are "employees" within the meaning of the Michigan labor mediation act, MCL 423.2(e); MSA 17.454(2)(e). Goodwill Industries of America, Inc., and Michigan Association of Rehabilitation Facilities have filed amicus briefs aligned with respondent. We reverse.

The facts of this case are set forth in this Court's previous opinion, *Local 1106, International Brotherhood of Electrical Workers, AFL-CIO v Goodwill Industries of Muskegon Co, Inc*, 162 Mich App 417, 418-421; 413 NW2d 67 (1987):

> In September of 1985, Local Union 1106, International Brotherhood of Electrical Workers filed a petition with the commission. The petition asserted that thirty percent or more of the full- and part-time janitors and laborers employed by Westport Janitorial Service wished to be represented for purposes of collective bargaining and sought an election and certification of a union representative pursuant to MCL 423.27; MSA 17.454(29). Goodwill responded that the workers were not "employees" within the meaning of the Michigan labor media-

---

* Former circuit judge, sitting on the Court of Appeals by assignment.

tion act, since the primary objective of the program in which they were working was rehabilitation and placement in competitive employment.

The parties stipulated that Westport, a nonprofit organization, is part of Goodwill's program to prepare "clients . . . for competitive employment elsewhere by rehabilitating them in regard to mental, physical, emotional and social disabilities." Before qualifying for the Westport program, the "clients" receive some type of rehabilitation training; they are referred to the Westport program by public schools, Michigan Rehabilitation, community mental health offices, and Job Training Partnership Act programs.

Prior to assuming their duties as Westport workers, the clients also undergo an additional twelve-week state-paid training program. After their training, however, the clients are supervised by Goodwill staff and are paid a minimum wage and perform labor and janitorial services pursuant to Goodwill's contracts with churches, public schools, state buildings, and commercial (e.g., doctors') offices. Goodwill reports in its budget any Westport revenues in the same manner as it reports other sources of revenue such as United Way contributions.

As part of the Westport rehabilitation program, Goodwill job placement officers, professional counselors and work adjustment counselors evaluate the clients and prepare reports on their physiological, psychological and psychiatric condition. The clients are allowed to stay in the program as long as required by their individual needs, but may be removed from the program or otherwise disciplined if necessary.

Following a hearing held in December of 1985, the commission in its opinion and order recognized that the relationship between Goodwill and its clients was unlike that of traditional competitive employment, since the relationship existed to serve the clients. However, the commission further stated that the existence of an employer/employee relationship was not precluded by a rehabilitative

relationship and concluded that the "clients" were "employees" within the meaning of § 2(e) of the Michigan labor mediation act, MCL 423.2(e); MSA 17.454(2)(e). The commission then ordered a vote among Westport's full- and part-time janitors and laborers.

In *Local 1106, supra,* this Court held that handicapped or disabled workers in a Michigan workshop operation may be excluded from the Michigan labor mediation act's definition of "employee," MCL 423.2(e); MSA 17.454(2)(e), if, on a case-by-case finding, the "guiding purpose" of the workshop is "rehabilitative" as opposed to "typically industrial." 162 Mich App 423. This Court remanded the case to MERC for a finding on the question of Westport's "guiding purpose." The "guiding purpose" test for determining whether respondent's clients were "employees" under the Michigan labor mediation act, MCL 423.2(e); MSA 17.454(2)(e), was gleaned from federal cases construing the National Labor Relations Act, 29 USC 152:

> [T]he federal courts have held that handicapped workers in a workshop setting are not excluded as a matter of law from being "employees" unless the "guiding purpose" of the workshop operation is "rehabilitative" as opposed to "typically industrial." *Cincinnati Ass'n for the Blind v NLRB,* 672 F2d 567, 571 (CA 6, 1982), cert den 459 US 835; 103 S Ct 78; 74 L Ed 2d 75 (1982). In conformity with the practice of the NLRB, a determination that the "guiding purpose" is "rehabilitative" or "typically industrial" is made on a case-by-case basis. *Id.* Where the "guiding purpose" is "rehabilitative" (i.e., primarily oriented toward providing social services to workers), the workers are not "employees" within the NLRA's definition. However, where the "guiding purpose" is "typically industrial" (i.e., where the rehabilitative purpose

is subordinate to routine business considerations),
the workers are "employees." *Id.* at 571-572.

Common factors noted by the NLRB and the
federal courts in finding the "guiding purpose" of
workshop operations to be "typically industrial"
include: whether the workshop was conducted for
profit, whether workers are suspended or termi-
nated for poor job performance, and whether work-
ers are compensated based on work performance.
A common factor in finding the purpose to be
"rehabilitative" is whether placement of a worker
in the workshop operation is temporary, as a
means of training, pending placement in private
industry. The focus is on factors which indicate
that the workshop is operating to benefit the
"workers," as opposed to such benefit being inci-
dental. *Id.; NLRB v Lighthouse for the Blind of
Houston,* 696 F2d 399 (CA 5, 1983), reh den 703
F2d 557 (CA 5, 1983); *Key Opportunities, Inc,* 265
NLRB 1371 (1982); *Goodwill Industries of South-
ern California,* 231 NLRB 536 (1977). [162 Mich
App 421-422.]

On remand, MERC held that, under the guiding
purpose test, Westport's clients are employees un-
der the Michigan labor mediation act. Accordingly,
the commission affirmed its original direction of
election.

MERC's findings with respect to questions of fact
are conclusive if supported by competent, material,
and substantial evidence on the record considered
as a whole. Const 1963, art 6, § 28; MCL 421.38;
MSA 17.540. This Court may review the law re-
gardless of the factual findings of the commission.
*Wayne Co Government Bar Ass'n v Wayne Co,* 169
Mich App 480, 485; 426 NW2d 750 (1988).

In this case, we are convinced that MERC misap-
plied the facts to the law and that the guiding
purpose of respondent's workshop is rehabilitative
rather than typically industrial. The parties stipu-

lated that the purpose of Westport Janitorial Service was to get clients ready for competitive employment elsewhere by rehabilitating them in regard to mental or physical disabilities. The parties stipulated that respondent employs specialists in job placement, professional counselors and work adjustment counselors to evaluate and report on the progress of respondent's clients as part of the rehabilitation effort. The parties stipulated that clients are not hired from the general public but are referred by various governmental agencies.

Evidence adduced in a hearing on a challenged ballot held November 6, 1986, also strongly indicates that respondent's Westport program was primarily oriented toward providing social services to workers. At the hearing, respondent's director Hugh Kennedy testified that, quite unlike the profit-seeking and performance-based factors used by this Court to characterize "typically industrial" employment, respondent's program suffered losses of $23,000 and responded by laying off its most productive workers and retaining workers whose work competence was low. In this way, respondent was able to cut its losses while continuing to serve the rehabilitative needs of those workers who needed it most. We believe that this evidence indicates that the workshop is operating to benefit the workers as opposed to such benefit being incidental. See *Local 1106 v Goodwill Industries, supra,* p 422.

Testimony at the challenged ballot hearing also revealed that workers who are retained in the program are selected not on the basis of work competence but on the basis of severity of handicap and need for supportive supervision. Thus, while a worker's performance and progress are regularly evaluated at Westport, workers are selected for retention within the program on the

basis of poor progress rather than acceptable performance, unlike the evaluative process in private industry.

The MERC focused on language in *Cincinnati Ass'n for the Blind v NLRB,* 672 F2d 567 (CA 6, 1982), cert den 459 US 835; 103 S Ct 78; 74 L Ed 2d 75 (1982), in concluding that a workshop's guiding purpose is typically industrial where the operation closely "resembles" a traditional for-profit business enterprise.

> Westport has certain characteristics typical only of a workshop operation: it hires only handicapped workers, it receives referrals from social service agencies, and its level of work is geared to the abilities of its workers rather than vice versa. None of these are characteristics of typical industrial employment. Nevertheless, the record also shows that work at Westport resembles traditional employment in many ways which may not be characteristic of all workshop operations.

However, the NLRB and the federal courts have held that the "guiding purpose" test requires more than merely focusing upon a workshop's outward resemblance to competitive business.

> From the foregoing, it is clear that the Employer's clients whom Petitioner seeks to represent are employees in the generic sense of the term. Clients work for a set number of hours a day, perform functions which are of recognized economic value, and are paid for the performance of those functions. Nevertheless, it is equally clear that this employment relationship is different in many, if not most, significant respects from the normal employment relationship.
>
> The focus of Goodwill's employment concern is upon rehabilitating its clients and preparing them for work in private competitive industry, not on producing a product for profit. Prospective clients

are 'hired' not on the basis of their competence, but on the basis of the severity of their impairments—presumably the more severe their impairment, the more likely they are to be hired. Wages are the same regardless of the client's performance or tenure, and are as much an instrument of the rehabilitative process as they are recompense for productive activity. In addition, clients are counseled rather than disciplined, are rarely, if ever, discharged, and are allowed to continue their employment as long as they desire. The picture presented is thus that of an employer whose primary objectives are the converse of a normal employer's objectives—so much so that Goodwill might better be classified as a vocational clinic than as a viable entrepreneurial concern. [*Goodwill Industries of Southern California,* 231 NLRB 536; 537 (1977).]

In *NLRB v Lighthouse for the Blind of Houston,* 653 F2d 206 (CA 5, 1981), the Fifth Circuit concluded that the NLRB's application of the "guiding purpose" test was not supported by substantial evidence where the board found workers to be covered "employees" because they were paid variable wages based upon performance and productivity. *Id.,* p 210. Reversing the board's decision, the Fifth Circuit observed as follows in holding that the workshop's wage scheme did not preclude a rehabilitative purpose despite its resemblance to a profit-seeking enterprise:

Such payments do not transform a sheltered workshop into an enterprise in which decisions are governed by economic considerations, rather payments relating to productivity are an integral part of the service provided by the workshop. They foster the goal of rehabilitation by providing an incentive to employees to learn the skills and, thus, become sufficiently acclimated to a work environment to move eventually from the sheltered workshop into the competitive job market. [653 F2d at 209.]

The characteristics of the Westport workshop resembling traditional employment relied upon by the MERC to infer a typically industrial guiding purpose are clearly an outgrowth of the program's rehabilitative purpose inasmuch as the program seeks to simulate competitive employment as a part of its rehabilitative efforts. This being so, MERC erred in determining that respondent's workers are "employees" for the purposes of the Michigan labor mediation act according to the legal standard set forth by this Court.

Reversed.