2009 OK 55

**OKLAHOMA GOODWILL INDUSTRIES, INC., Plaintiff/Appellee,**

v.

**OKLAHOMA EMPLOYMENT SECURITY COMMISSION, Defendant/Appellant,**

**and**

Assessment Board of the Oklahoma Employment Security Commission; Board of Review of the Oklahoma Employment Security Commission; and Beverly A. Peters, Defendants.

No. 102,539.

Supreme Court of Oklahoma.

July 7, 2009.

John E. Miley, Deputy General Counsel, Oklahoma Employment Security Commission, Oklahoma City, OK, for Appellant.

Sarah J. Timberlake and William C. McAlister, Abowitz, Timberlake & Dahnke, P.C., Oklahoma City, OK, for Appellee.

PER CURIAM.

¶ 1 The issue presented is whether Oklahoma Goodwill Industries, Inc., is exempt from paying unemployment taxes on individuals participating in rehabilitation and/or remunerative work/training programs that Goodwill operates at Tinker Air Force Base and in Oklahoma state offices. Goodwill provides such programs pursuant to federal and state contracts mandating that individuals with severe handicaps or disabilities be utilized in performing contracted-for commodities or services. We hold that the Legislature intended to exempt employers, like Goodwill, from the payment of unemployment taxes when operating rehabilitation or remunerative work programs for individuals (1) whose earning capacity is impaired by age, physical or mental deficiency, or injury, or (2) who, because of their impaired mental or physical capacity, cannot be readily absorbed into the competitive labor market, as provided by 40 O.S. Supp.2008 § 1–210(7)(d).[1] We further hold that the purpose of this exemption is to promote programs of this general nature, as opposed to only programs operated at employer-owned facilities. Accordingly, this exemption extends to individuals who participate in rehabilitation work programs operated at non-Goodwill owned

---

1. Title 40 O.S. Supp.2008 § 1–210(7)(d) is identical to the 2002 version of the subsection that was in effect when this matter arose. Because amendments to other subsections of § 1–210 subsequent to 2002 are immaterial to the question before us, references are to the current statute.

facilities like Tinker Air Force Base and state offices pursuant to the federal and state contracts.

## FACTS AND PROCEDURAL HISTORY

¶2 Goodwill is a non-profit organization that provides rehabilitation and remunerative work for severely disabled persons. Individuals who participate in Goodwill's rehabilitation program(s) are classified as consumers. Goodwill assigns consumers to work at its sheltered workshop and thrift shops, as well as at Tinker Air Force Base and state offices. Consumers who provide services at Tinker Air Force Base and the state offices do so pursuant to federal and state set-aside contracts authorized by the Javits–Wagner–O'Day Act (JWOD Act) (41 U.S.C. §§ 46 through 48c) and the State Use Act (74 O.S. 2001 and Supp.2008 §§ 3001 through 3010).[2]

¶3 Under the contracts with Tinker Air Force Base and the state, the consumers perform supervised custodial services. At least seventy-five percent (75%) of the hours worked under these contracts must be supplied by Goodwill consumers. Goodwill maintains office space at Tinker Air Force Base and in the state office buildings which is utilized to offer rehabilitation services to consumers working as custodians under the respective contracts. The support that Goodwill supplies at government facilities include: (1) team meetings between case workers and trainers; (2) vocational evaluations by the case workers and/or trainers; (3) meetings or conferences with consumers and/or their representatives; and (4) individualized training.

¶4 In 2002, Goodwill's newly appointed president concluded that Goodwill consumers working at Tinker Air Force Base and state offices under these governmental contracts fall within the statutory exemption found at § 1–210(7)(d) from unemployment coverage. This subsection provides:

(7) For the purposes of paragraphs (3) and (4) of this section the term 'employment' does not apply to service performed:

\* \* \*

(d) by an individual receiving rehabilitation or remunerative work while participating or enrolled in a program in a facility that:

(i) conducts a program of rehabilitation for individuals whose earning capacity is impaired by age, physical or mental deficiency, or injury; or

(ii) conducts a program that provides remunerative work for individuals who, because of their impaired mental or physical capacity cannot be readily absorbed into the competitive labor market. . . .

Goodwill stopped reporting the wages of the individuals working under federal and state contracts on January 1, 2003.

¶5 The Oklahoma Employment Security Commission's (OESC) tax enforcement officer investigated several claims for unemployment benefits by Goodwill consumers who had been separated from employment under the federal and state contracts. In reviewing the claim of Beverly Peters, a Goodwill consumer who had been assigned to work at Tinker Air Force Base, OESC determined

---

2. The Javits–Wagner–O'Day Act [JWOD Act] (41 U.S.C. §§ 46 through 48c) establishes a committee known as the "Committee for Purchase from People Who Are Blind or Severely Disabled" and authorizes it to establish and maintain a list of commodities and services provided by qualified nonprofit agencies for the blind or severely handicapped which it has determined are suitable for procurement by the government (the "procurement list"). 41 U.S.C. §§ 46(a), 47(a). Once a commodity or service has been added to the procurement list, contracting agencies are required to procure that commodity or service from a qualified agency for the blind or severely handicapped if it is available within the time period required. 41 U.S.C. § 48.

The State Use Act (74 O.S.2001 and Supp.2008 §§ 3000 through 3010) creates in the Department of Central Services (DCS) a committee known as the "State Use Committee" (74 O.S. Supp.2008 3001) whose duties include (a) the certification of severely disabled individuals and sheltered workshops as qualified organizations (74 O.S. Supp.2008 3003(5)) which contract with the State to provide products and services made by severely disabled individuals, and (b) the agencies are required to purchase any needed goods and services on the procurement schedule from the designated nonprofit agencies which provide "employment to people with severe disabilities at the fair market price determined by the Committee if the product or service is available within the period required by the entity." 74 O.S.2001 3007(A). See O.C. 580:15–2–2 (2005) (DCS administrative rules.)

that the services performed there did not fall within the statutory exemption from unemployment taxes and awarded her unemployment benefits. Following the award and entry of an assessment, Goodwill brought a tax protest before the OESC Assessment Board (Board). The sole issue addressed by the Board was whether individuals performing service as part of a rehabilitation work program under the terms of the JWOD Act and the State Use Act are exempt from coverage as provided in § 1–210(7)(d).

¶6 OESC has argued before the Assessment Board and on appeal in the district court that exemptions from coverage should be narrowly construed against the taxpayer. OESC has asserted that intent to limit the exemption to only those workers who work in an employer-owned facility is reflected in the Legislature's use of the term "in a facility" to describe where eligible programs are conducted.

¶7 Goodwill has countered that its consumers who perform services that are rehabilitative in nature, should be exempt from coverage if they "cannot be readily absorbed in the competitive labor market" because of their mental or physical limitations, regardless of where the rehabilitative work is performed. Goodwill believes the statutory exemption is tied to the nature of the rehabilitative program provided by Goodwill and, therefore, extends to rehabilitative programs at Tinker and state offices under the aforementioned state and federal contracts.

¶8 The Board affirmed the OESC determination. Upon Goodwill's appeal to the district court, the trial court reversed the Board's order. Upon further appeal to this Court by OESC, we have retained this case for disposition. We agree with Goodwill's interpretation of § 1–210(7)(d).

## GOODWILL REHABILITATIVE WORK PROGRAMS AT FEDERAL AND STATE FACILITIES ARE EXEMPT FROM UNEMPLOYMENT TAXES UNDER 40 O.S. SUPP.2008 § 1–210(7)(d).

¶9 It is undisputed that the rehabilitation programs Goodwill provides at Tinker Air Force Base and state offices are *the type of* rehabilitation work programs exempted by § 1–210(7)(d). However, OESC argues that only consumers participating in a program "in a facility" fall under the exemption. More particularly, OESC asserts the tax exemption is applicable to Goodwill's services only when a consumer is employed in a sheltered workshop or other location owned and/or operated by Goodwill. Given the fact that both federal and state law promote rehabilitation and remunerative work programs on-site at federal and state facilities, we cannot agree that the Legislature intended such a restrictive application of the exemption.

■ ¶10 It is well settled that Legislative intent is not determined from isolated phrases in a statutory framework. Rather, intent is ascertained from the whole act in light of its general purpose and objective. *McSorley v. Hertz Corp.*, 1994 OK 120, ¶6, 885 P.2d 1343; *Oglesby v. Liberty Mutual Ins. Co.*, 1992 OK 61, ¶8, 832 P.2d 834; *Smicklas v. Spitz*, 1992 OK 145, 846 P.2d 362.

■ ¶11 In general, "facility" is construed as an inclusive term intended to embrace anything which aides in the performance of a duty.[3] Rather than a restricted interpretation to indicate services provided at a physical location owned, operated or controlled by Goodwill, it is much more likely the term "facility" in the statute relates to the entity who has undertaken the duty to provide the program of rehabilitation or remunerative work to consumers with severe disabilities. While a "location" may provide the venue for services, it cannot provide the rehabilitation or remunerative work contemplated by the legislative enactment. In the case at hand the "facility" providing the service is Goodwill. This meaning is also dictated by the fact that the tax exemption is extended to a service provider conducting the program of rehabilitation or remunerative work, not to a physical location.

¶12 This conclusion is further supported by case law from other jurisdictions. Al-

---

3. *Illinois Bell Telephone Co. v. Miner*, 11 Ill. App.2d 44, 136 N.E.2d 1 (1956); *Nekoosa–Edwards Paper Co. v. Minneapolis, St.P. & S.S.M. Ry Co.*, 217 Wis. 426, 259 N.W. 618, 620 (1935).

though none of the following cases mandate the result we reach on this matter, they are instructive. In *Local Union 1106, International Brotherhood of Electrical Workers, AFL-CIO v. Goodwill Industries of Muskegon County, Inc.,* 176 Mich.App. 696, 440 N.W.2d 635 (1989), the Michigan court considered whether Goodwill consumers were "employees" while receiving rehabilitation and placement in competitive employment for purposes of labor relations laws. In the Michigan case, Goodwill treated their individuals in much the same manner as are the Oklahoma consumers. After training, the Michigan consumers were supervised by Goodwill staff and paid a minimum wage to perform labor and janitorial services pursuant to Goodwill's contracts with "churches, public schools, *state buildings,* and commercial (e.g., doctors') offices."[4] *Id.* at 636 (emphasis added).

¶ 13 The Michigan court determined that the Goodwill consumers were not employees in the traditional sense. It recognized that the Goodwill consumers were employees only in the "generic" sense of the word and that the employment relationship was "different in many, if not most, significant respects from the normal employment relationship." The consumers were not "hired" for their competence. Rather, they were included within the facility's program not on the basis of competence but on the existence of debilitating conditions.

¶ 14 In a similar case, the Fourth Circuit also determined that Goodwill consumers were not employees for purposes of labor relations laws. In *Baltimore Goodwill Industries v. N.L.R.B.,* 134 F.3d 227 (4th Cir. 1998), the federal tribunal recognized that Goodwill's programs were primarily rehabilitative and atypical compared with private industrial settings.

¶ 15 The highest court in West Virginia considered the issue of unemployment compensation for a claimant receiving rehabilitative training in *LeMasters v. Gatson,* 193 W.Va. 676, 458 S.E.2d 613 (1995). Like Oklahoma's exemption, the West Virginia statute exempted from the term "employment" services performed "in a facility conducted for the purpose of carrying out a program of rehabilitation." *Id.* at 616. The "facility" in *LeMasters* was the West Virginia Society for the Blind. In a program not unlike that of Goodwill in the case at hand, the consumer was employed as a food services worker in a cafeteria at the United States Department of Energy facility in Morgantown. After being terminated by the Society, the consumer sought unemployment compensation. The West Virginia court determined that the employment at the facility appeared "to be the very type specifically exempted from unemployment compensation." *Id.*

¶ 16 In our view, Goodwill's contracts with Tinker Air Force Base and the state offices provide opportunities for Goodwill's consumers to receive rehabilitation and remunerative work in a "sheltered" environment comparable to Goodwill owned facilities. Such contracts are a safety net for those individuals with disabilities who cannot readily find work. Relief from the payment of unemployment benefits to non-profit agencies like Goodwill serves as a substantial incentive for charitable organizations to contract with federal and state agencies in providing rehabilitative services and remunerative work to individuals with disabilities who most likely are unable to obtain gainful employment elsewhere.

¶ 17 Congress and the Oklahoma Legislature have struck the balance in favor of promoting the viability of rehabilitative and remunerative services over the possibility of consumers getting an unemployment check.[5] They have done so because temporary unemployment benefits are poorly suited to help individuals with disabilities. Such benefits often expire before consumers find new employment.

¶ 18 Moreover, Congress has provided alternative means of support for unemployed individuals with disabilities through supple-

---

4. Although the opinion refers to Goodwill's program as a "workshop operation," it is obvious that the consumers custodial services were offered in off-site locations.

5. *Tyler v. Smith,* 472 F.SupP.2d 818 (M.D.La. 2006).

mental security income (SSI).[6] Therefore, Goodwill consumers who become unemployed are not without a monetary remedy should they be unable or unwilling to perform the tasks assigned.[7]

## CONCLUSION

¶ 19 We hold that § 1–210(7)(d) exempts Goodwill from the payment of unemployment taxes when conducting programs of rehabilitation or remunerative work for individuals whose earning capacity is impaired by age, physical or mental deficiency, or injury, or who, because of their impaired mental or physical capacity, cannot be readily absorbed into the competitive labor market. We further hold this exempting extends to individuals providing services at federal facilities and in state office buildings under contracts Goodwill has entered into pursuant to the JWOD Act and the State Use Act. This determination is supported by the purpose of legislation favoring employment of individuals with disabilities, the legislative intent, and extant jurisprudence. The trial court judgment is **AFFIRMED.**

¶ 20 EDMONDSON, C.J., WATT, WINCHESTER, COLBERT, and REIF, JJ., concur.

¶ 21 TAYLOR, V.C.J., HARGRAVE, OPALA, and KAUGER, JJ., dissent.

OPALA, J., with whom TAYLOR, V.C.J., joins, dissenting

¶ 1 In public-law litigation the duty is ours—neither that of the litigants nor that of the trial court—to frame the issues to be resolved on review. The court decides this case today solely on the issues pressed by the taxpayer and conveniently forgets that this is not a private controversy but one in which this court alone is required to formulate the issues to be reached for disposition.[1]

¶ 2 As I analyze the record before us, **the sole issue that is dispositive of the case and must be reached here** is whether Oklahoma Goodwill Industries (Goodwill or taxpayer) **presented below a stale claim** that is barred by laches and estoppel for Goodwill's failure to raise the issue within a reasonable time after the taxpayer first knew or should have known that the tax stood imposed by those in authority.

¶ 3 In 2003 the Oklahoma Employment Security Commission (OESC or taxing authority) ruled that Goodwill employees who provide janitorial services at Tinker and State office buildings under state and federal contracts were entitled to unemployment compensation benefits. Today's reversal of that decision rests entirely on Goodwill's own analysis that the services of those individuals fall within the statutory exception from unemployment taxes.[2]

¶ 4 As I view the case before us, the **burden to contest the applicability of the tax fell on the taxpayer** when it **first knew or should have learned** of OESC's position in this matter.[3] **Goodwill utterly failed to bring here a record demonstrating that its claim is not stale.** The record does not show that Goodwill timely resisted the application of the tax to its employees working at Tinker and State office buildings. On the other hand, clear indicia present in the record show that prior to 2002 an earlier Good-

6. *See,* 20 C.F.R. § 416.110.

7. *Tyler v. Smith,* see note 8, supra.

1. The question of employer's liability for unemployment insurance taxes presents for our resolution an issue of public law. When confronting a matter of public law, this court may grant corrective relief on any applicable legal theory dispositive of the case and supported by the record. *Schulte Oil Co., Inc. v. Oklahoma Tax Com'n,* 1994 OK 103, ¶ 7, 882 P.2d 65, 69 (a question of tax liability presents a public-law controversy); *Yeatman v. Northern Oklahoma Resource Center of Enid,* 2004 OK 27, ¶ 15, 89 P.3d 1095, 1101 (when resolving a public-law question, we are free to choose *sua sponte* the dispositive public-law theory although the wrong one is advanced); *Amos v. Spiro Public Schools,* 2004 OK 4, ¶ 7, 85 P.3d 813, 816.

2. For the provisions of the challenged unemployment tax exemption statute see 40 O.S.2001 1–210(7)(d).

3. See, *e.g., R.H. Stearns Company v. United States,* 291 U.S. 54, 54 S.Ct. 325, 328, 78 L.Ed. 647 (1934) (the burden is on the taxpayer who seeks a refund to prove the allegation that an overassessment was illegally entered for the previous year).

will management had, for an indeterminate period of time, (a) **accepted the rate and applicability** of the unemployment insurance tax to its employees who work at federal and state facilities and (b) **reported the wages** of these individuals on its quarterly statements to the OESC.[4] By these reports Goodwill has represented to the taxing authority that the employment of all similarly classified persons **is not statutorily exempt from coverage.** It was not until the appointment of a new president in 2002 that Goodwill changed its position. **It now insists on pressing for judicial relief from its earlier self-assessed tax liability.**

¶ 5 There is a clear distinction between challenging **the very applicability of a tax** and contesting the **amount of the assessment.** With each **change of assessment,** a taxpayer is given a new claim and another opportunity timely to challenge the assessed amount. But at the **initial assessment of a tax,** a taxpayer must act promptly to challenge the **applicability of that assessment** to the taxpayer who refuses to concede that the levy is proper.

¶ 6 An unemployment tax is an ever **recurring levy** that does not require an annual reassessment. The tax stands assessed at the same rate by operation of law and continues until it is changed by the Legislature. A taxpayer makes a self-assessment of its unemployment tax liability based on the payroll.[5] When the tax is **continuing** and **the taxpayer remains silent for a considerable time,** the taxing authority may and will assume that the tax was not improperly imposed. A taxpayer must be diligent in challenging the applicability of a tax by timely notice to the proper government authority and in seeking a hearing on the contested issue.

¶ 7 Goodwill should have **challenged the applicability** of the unemployment tax when it **first employed persons** under the federal and state programs **and reported their wages to the OESC.** By its self-assessment and classification of these individuals for unemployment benefits over a long period, Goodwill must now be viewed as having known of OESC's legal position with respect to this controversy. Because Goodwill **waited for a long time** after it **acquired knowledge of, or should have learned** of, OESC's position to contest its liability for the tax, Goodwill presented in this case a stale claim. That claim stands barred by laches and estoppel.[6] Goodwill cannot raise its selected

---

4. According to the president of Goodwill (a) after she was appointed to that position in 2002 she decided that the terms of § 1–210(7)(d) exempted the wages of the consumers involved here from unemployment taxes and (b) on 1 January 2003 Goodwill stopped reporting their wages to the OESC. She believed the consumers' wages that had been reported and paid prior to 2002 would have fallen under the statutory exemption. She did not know why Goodwill failed to claim the exemption before 2002, but she believed those pre–2002 wages were wrongly reported. The transcript of proceedings held on 28 January 2004 before the OESC Assessment Board shows at pgs. 81–82:

> Q. [OESC counsel] And one of the things that's changed was that you stopped reporting wages to us. And that's what I'm saying—
> A. [Goodwill president] I think we reported wrongly before. I think it was incorrect. I don't know why it was incorrect before, but I know it was incorrect before. People that had wages reported prior to 2002, who were in the rehabilitation program, would have fallen under this statute. I don't know why that exemption was not claimed at that time.

5. The unemployment compensation tax is akin to income tax which is a continuing assessment on the income and runs from year to year. In *Hudson v. U.S.,* 82 Ct.Cl. 15, 12 F.Supp. 620 (Ct.Cl.1935), the court stated the "income tax is a general tax on all income;" "it is a continuing tax, usually divided for convenience in collection into periods of one year." *See also U.S. v. Jefferson–Pilot Life Ins. Co.,* 49 F.3d 1020, 1022–23 (4th Cir.1995), where the court dealt with a "continuing tax levy on salary or wages" payable to a taxpayer on a **recurring basis.** The court explained that the **continuing levy provision** of the federal statute was designed to ease the substantial administrative problems that would be faced if the IRS could only impose **successive levies** upon remuneration contractually owed a defaulting taxpayer for personal services. *Id.*

6. A proceeding to recover a refund of overpayment of unemployment taxes is in its nature equitable and governed by equitable principles. *State of Oklahoma ex rel. Oklahoma Employment Security Commission v. Sanders,* 1956 OK 262, ¶ 0 syl. 2, ¶ 7, 304 P.2d 287, 288–89. Since, in this type of action, the plaintiff must recover by virtue of a right measured by equitable standards, it follows that it is open to the defendant to show any state of facts which, according to those standards, would deny him or her the

issue for judicial resolution until the Legislature changes the tax either as to the rate or manner in which it is to be collected or the OESC in some fashion alters its position *vis-a-vis* the taxpayer. From my review of the record, the only change that ever occurred here was Goodwill's altered perception of disadvantage from surrounding circumstances **but the government's position never underwent any changes.**

¶ 8 It is for these reasons that I would hold this claim barred from judicial recognition as rendered stale by Goodwill's long-standing inaction. In short, Goodwill's hope for tax exoneration must fail in its entirety.

right. *Stone v. White*, 301 U.S. 532, 534–35, 57

S.Ct. 851, 852–53, 81 L.Ed. 1265 (1937).