2004 OK 27

**Betty YEATMAN, Petitioner,**

v.

**NORTHERN OKLAHOMA RESOURCE CENTER OF ENID, Compsource Oklahoma, and The Workers' Compensation Court, Respondents.**

**No. 98,951.**

Supreme Court of Oklahoma.

April 13, 2004.

---

**27.** *Application of Oklahoma Capitol Improvement Authority,* 958 P.2d at 764.

**28.** *Id.*

Walt Brune, Ponca City, and Fred L. Boettcher, Ponca City, for Petitioner.

Darren Derryberry and Victor Trautmann, Oklahoma City, for Respondents.[1]

OPALA, V.C.J.

¶ 1 This certiorari presses two questions for our decision: (1) Whether the Court of Civil Appeals (COCA) erred when it sustained the Workers' Compensation Court's (WCC) refusal to recognize an order made approximately five-months earlier? and (2) Did COCA err when it placed upon the claimant the burden of proving her continued temporary total disability? We answer both questions in the affirmative.

1. Identified herein are only those counsel for the parties whose names appear on the certiorari briefs.

2. Claimant's injury was diagnosed as a rotator cuff tear.

3. The record does not include an order initiating TTD payments but the parties' briefs agree that employer began TTD payments on 27 April 1998. We assume that respondent voluntarily commenced TTD payments in accordance with the terms of 85 O.S. Supp.1997, Ch. 4, App. Rule 14.

4. Treating physician's report of 26 April 1999. (Record, p. 32)

5. On 6 July 1999 respondent moved for a prehearing conference on its request that the claim

## I.

## THE ANATOMY OF LITIGATION

¶ 2 Betty Yeatman (Yeatman or claimant), an employee of Northern Oklahoma Resource Center of Enid (with CompSource, its insurance carrier, collectively respondent or employer), injured her shoulder[2] on 20 April 1998 while lifting a patient from bed to place him in a wheelchair. Respondent began paying TTD benefits on 27 April 1998.[3]

¶ 3 Claimant's injury was conservatively treated for approximately one year. On 26 April 1999 Yeatman's treating physician suggested arthroscopic surgery might be indicated but noted a complicating factor that was not work related—a seizure disorder—that he recommended must first be evaluated by a neurosurgeon.[4] His report added that claimant was limited in her ability to function. Yeatman was scheduled in June 2000 to undergo brain-lesion surgery to alleviate her seizures when she discovered that she had breast cancer. She subsequently underwent surgery *first for* breast cancer in June 2000 and *then for* the brain lesion in August 2001. She had no further treatment for her shoulder condition.

¶ 4 The record reveals employer's concerns about claimant's failure to receive treatment for her shoulder injury after 26 April 1999 and its concomitant payment of TTD.[5] On 27 February 2001 Yeatman requested additional TTD benefits. The Workers' Compensation Court issued a 4 April 2001 [6] order requiring respondent to continue payment of TTD benefits for up to an additional 52 weeks but deferred to a future hearing any demand for TTD overpayment.[7] Employer stopped pay-

be held in abeyance because of the physician's failure to treat claimant. In its 13 July 2000 answer to the fourth of claimant's motions for a hearing on supplemental medical benefits (filed 1 November 1999, 4 November 1999, 10 December 1999 and 26 June 2000) respondent lists "reserve overpayment of TTD from 4/26/1999 to present ..." Employer's 8 November 2000 request for prehearing conference lists "discuss unrelated health problems affecting treatment and period of TTD." The record is devoid of documents that indicate the ultimate disposition of these filings.

6. The request for continued TTD was heard 20 March 2001. The order was filed 6 April 2001.

7. The order provides:
"That respondent and insurance carrier shall continue payment of temporary total disability

ing benefits on 29 December 2001, urging that its duty to pay them ended by operation of law in accordance with the terms of 85 O.S. Supp.1997 § 22.2(b).[8] It then moved on 10 January 2002 for an order terminating temporary compensation. Employer's motion noted it had "terminated TTD as respondent received no extension of benefits or any medical [treatment] to support continued benefits."[9] Claimant timely moved for a hearing on her objection to the termination. On 6 May 2002 she requested that the court hear both TTD and permanent partial disability (PPD) benefit issues.[10]

¶ 5 Before Yeatman's hearing she went to two evaluating physicians, neither of whom had seen her previous to their examinations. Claimant's rating doctor found her temporarily totally disabled from the date of injury through the date of the examination, 20 February 2002. Respondent's physician made no mention of temporary total disability period

but found Yeatman had achieved maximum benefit from medical treatment and was unlikely to benefit from continued therapy.[11] These evaluations were admitted in evidence at the 28 August 2002 hearing. Each party interposed a probative-value objection to the other's medical reports. Yeatman testified at the hearing that she no longer desired shoulder surgery but, as COCA correctly noted, nothing was elicited about the time when she made that decision.

¶ 6 On 18 September 2002 the trial judge adjudicated the extent of Yeatman's permanent partial disability and awarded her PPD benefits.[12] She further ruled Yeatman to have been temporarily totally disabled for only one year—from the time of her injury to 26 April 1999. The order held respondent was entitled to a credit for TTD overpayment from 26 April 1999 (one year after the date of her injury) to 29 December 2001 (the date respondent quit paying benefits). Claimant

---

benefits to claimant for up to an *additional* 52 weeks.

That determination of overpayment of temporary total disability compensation is reserved for future hearing." (Record, p. 19) (Emphasis supplied)

8. (Respondent's brief, p. 1) The respondent does not explain why the 29 December 2001 date is critical in relation to § 22.2(b) terms. It simply quotes that portion of § 22.2(b), *infra*, which provides the employee "shall be paid [benefits] during the continuance thereof, *but not in excess of fifty-two (52) weeks*." (Respondent's supplemental brief, p. 2) (Emphasis supplied)

The terms of 85 O.S. Supp.1997 § 22.2(b), the statute in force at the time of claimant's injury, provide:

"2. Temporary Total Disability.
* * *(b) With respect to injuries occurring on or after the effective date of this act, in cases of temporary total disability, seventy percent (70%) of the employee's average weekly wages shall be paid to the employee during the continuance thereof, but not in excess of fifty-two (52) weeks, except as otherwise provided in the Workers' Compensation Act. Provided, after compensation has been paid for a period of forty-two (42) weeks, the employee may request a review of the case by a judge of the Court for continued temporary total disability benefits provided by the Workers' Compensation Act. Upon a finding that benefits should be extended beyond the initial fifty-two-week period, compensation may be continued for additional successive fifty-two-week periods, provided the employee has requested review of the case at forty-two (42) weeks during each period involved, and upon a finding by the Court

that benefits should be extended. Total payments of compensation for temporary total disability may not exceed a maximum of three hundred (300) weeks in the aggregate."

9. (Record, p. 22)

10. Two motions for a hearing were submitted by claimant. The first, filed 28 January 2002, objected to the termination of TTD. The second, filed 5 May 2002, requested the issues of PPD and TTD—the latter from 24 April 1998 to 20 February 2002—be heard.

11. This report was dated 6 June 2002.

12. The September order provides:

" * * * THAT as a result of said injury, claimant was temporarily totally disabled from APRIL 27, 1998 to APRIL 26, 1999; claimant received compensation from APRIL 27, 1998 to DECEMBER 29, 2001; therefore respondent is entitled to credit for overpayment of temporary total disability compensation from APRIL 26, 1999 to DECEMBER 29, 2001, a period of 140 weeks and 0 days in the amount of $38,164.00 to be deducted from the latter end of the award herein.* * * "

"THAT as a result of said injury, claimant sustained 20 percent permanent partial disability to the BODY AS A WHOLE due to injury to the RIGHT SHOULDER, for which claimant is entitled to compensation for 91 weeks at $213.00 per week, or the total amount of $19,383.00 of which 91 weeks have accrued and shall be paid in a lump sum $19,383." * * * (Record, p. 27)

then sought intra-court review contending the decision was contrary to the clear weight of the evidence. In a two-to-one decision a three-judge panel of the WCC sustained the trial judge's order.[13] Claimant sought review of the adverse panel decision.

### The Court of Appeals' Pronouncement

¶ 7 Yeatman sought relief from the panel's order urging (1) her intervening medical conditions, which prolonged the period of temporary total disability, do not afford a legally tenable basis for terminating temporary total disability, citing *Thomas v. Burggraf Restoration*,[14] (2) the overpayment credit to her employer is not supported by competent evidence and (3) the WCC failed to adjudicate her claim for TTD benefits from 29 December 2001 (the date respondent stopped paying TTD) to 20 February 2002 (the date her rating physician determined she was no longer in a healing period).

¶ 8 Employer responded that (1) the totality of the evidence supports the trial tribunal's order granting it credit for overpaid TTD (2) claimant's TTD benefits expired by operation of law[15] and the burden of proof would hence rest on the claimant if additional compensation is sought (3) the principles that deal with intervening medical conditions are not applicable here and (4) because claimant failed to raise (before the three-judge panel) her request for TTD benefits from 29 December 2001 to 20 February 2002, COCA may not now address them on appeal.

¶ 9 The Court of Civil Appeals (COCA), Div. III, sustained the panel's ruling. It concluded that *Thomas*—a case dealing with the impact of intervening medical conditions which prolong TTD—was not apposite to the resolution of this controversy. *Thomas* teaches that a claimant receiving previously awarded TTD does not forfeit these benefits when a medical condition, not caused by claimant, requires that the treatment being provided be postponed. Yeatman, according to COCA, failed to show she was in a healing period during the second 52 week period, the time of her intervening illnesses.[16] The *Thomas* principles are hence inapplicable. Further Yeatman did not postpone treatment, according to COCA, but decided not to pursue further treatment. She hence elected to seek PPD benefits, meaning that in law she had reached maximum medical improvement. Because Yeatman's last treatment for her shoulder injury was within the first fifty-two week period,[17] COCA ruled the trial tribunal was correct in not authorizing TTD beyond that period.

¶ 10 COCA next addressed Yeatman's contention that the employer's TTD overpayment credit does not rest on competent evidence. According to her, this is so because her employer failed to present any evidence that shows her TTD status has ended. Only the report submitted by Yeatman's evaluating physician defined the length of her TTD period.[18] COCA ruled that Yeatman's inability to show she was temporarily totally disabled during the second 52–week period is

13. One member of the panel dissented, indicating there was no medical evidence to support TTD's termination on 26 April 1999.

14. *Thomas v. Burggraf Restoration*, 2001 OK CIV APP 110, 31 P.3d 402.

15. For the terms of § 22.2(b) see *supra* note 8.

16. (COCA opinion, p. 4) The record shows only one request by Yeatman for 52 weeks of additional TTD. This was dated 22 February 2001. Because respondent began TTD payments on 27 April 1998, claimant's request for additional TTD is likely not for the second 52 week period but is a request for a later, albeit unspecified, period.

17. COCA calculates the date that terminates the first fifty-two week period to coincide with the date of Yeatman's last appointment with her treating physician for her shoulder—26 April

1999. See *supra* note 16 concerning the number of 52 week periods discussed.

18. Yeatman asserts that there is simply a lack of any medical evidence showing claimant's TTD period ended on 26 April 1999. The medical report submitted by the respondent's evaluating physician, dated 6 June 2002, does not mention a period of TTD—only that Yeatman had reached maximum benefit from treatment and was unlikely to profit from additional therapy. Neither has the treating physician "released" claimant from her shoulder treatment. The medical report offered by Yeatman's rating physician is the only evidence that addresses a TTD period. It indicates TTD runs from the date of injury to 20 February 2002. This is fatal to respondent's cause, according to Yeatman, because for termination of TTD payments the burden of proof rests on it.

exactly the competent evidence that supports the overpayment.[19]

¶ 11 Lastly, because COCA agreed that claimant was not temporarily totally disabled after 26 April 1999, it held the WCC's failure to address her claim for TTD benefits from 29 December 2001 to 20 February 2002 to be moot.[20]

### The Parties' Certiorari Arguments

¶ 12 Yeatman's certiorari petition and brief challenge both the panel order and COCA's opinion. She maintains respondent has failed to submit any evidence that proves she was no longer temporarily totally disabled,[21] and that COCA's conclusion—that she abandoned treatment for her shoulder—is unfounded by proof. She continues to assert that the *Thomas* principles are applicable to her situation. Yeatman further urges that COCA's analysis impermissibly places on her the burden of proving she was in a healing period. Because the April 2001 order awards her TTD, she contends the only way payments could be discontinued during the period over which it extends is by termination based upon a medical report that finds

TTD to have ended. The burden of proving termination (during a period covered by an order for continuing TTD) rests on the employer in accordance with the terms of 85 O.S. Supp.1997 § 1.1B[22] and 85 O.S. Supp. 1997, Ch.4, App. Rule 15.[23]

¶ 13 Employer continues to maintain that claimant's TTD benefits do not simply extend for an indefinite period until the employer provides evidence supporting its earlier termination. Rather, she is required periodically to provide medical proof to support her claim for continuing TTD, in accordance with the terms of 85 O.S. Supp.1997 § 22.2(b) and extant jurisprudence.[24] Yeatman failed after 26 April 1999 to present any medical evidence that shows her to be in a healing period. If claimant desires to seek additional benefits, the burden of proof and persuasion must now fall on her.

### II.

### STANDARD OF REVIEW

¶ 14 The dispositive issues pressed on certiorari call solely for resolution of legal questions. Review of contested law is governed by a *de novo* standard.[25] In its re-

**19.** (COCA opinion, p. 5)

**20.** Because COCA determined this issue to be moot and it was not re-urged by claimant on certiorari, it was not preserved for our review. An issue tendered and decided on appeal but not re-pressed by petition or counter-petition for certiorari stands abandoned. See the provisions of Rule 1.180(b), Supreme Court Rules, 12 O.S. 2001, Ch. 15, app.1. *Hough v. Leonard*, 1993 OK 112 ¶¶ 15–17, 867 P.2d 438, 445–46.

**21.** For a complete explanation of claimant's evidentiary argument, see *supra* note 18.

**22.** The text of § 1.1B provides:
" * * *B. The burden of proof, by a preponderance of the evidence, shall be on the party requesting the benefits or relief pursuant to the provisions of the Workers' Compensation Act unless otherwise specifically provided for by law."

**23.** Claimant does not refer to a particular subsection of Rule 15. The text of subsection C provides:
" * * * In all other events, ... temporary compensation may be terminated only as follows:
1. The employer shall file its Form 11, Motion to Terminate Temporary Compensation, with the court and mail a copy thereof to the employee. If the employer's request to terminate is based upon the written medical report of a Form 5 of a physician who indicates the employee has been released from the physician's professional care and is able to return to work, a copy of that report of the Form 5 shall be mailed to opposing parties. The Form 11 shall contain a statement that the report of the Form 5 was mailed to opposing parties.
2. If the employee objects to the employer's termination of temporary compensation, the employee shall have fourteen (14) days from the date the employer's Form 11 is filed ... to object to the termination of temporary compensation by the filing of a Form 9, Motion to Set for Trial. The claimant must file the Form 9 with the Court and mail a copy thereof to the employer or its insurance carrier. The employee shall state on the form 9 specific reasons for the objection to the termination of temporary compensation.* * * * "
For the terms of subsections A and B, see *infra* notes 45 and 47 respectively.

**24.** For the text of § 22.2(b) see *supra* note 8. Claimant also cites to extant jurisprudence for the position that temporary total disability does not continue indefinitely but must be proved during each period of disability. See *infra* section IVA of the text.

**25.** *Arrow Tool & Gauge v. Mead*, 2000 OK 86, ¶ 6, 16 P.3d 1120, 1122–23; *Neil Acquisition L.L.C. v. Wingrod Investment Corp.*, 1996 OK 125, ¶ 5, 932 P.2d 1100, 1103; *Brown v. Nicholson*, 1997 OK 32, ¶ 5, 935 P.2d 319, 321.

examination of the trial tribunal's legal rulings an appellate court exercises plenary, independent and nondeferential authority.[26]

## III.

## TODAY'S FIRST ISSUE IS TO BE RESOLVED BY THE PRINCIPLES APPLICABLE TO AN ORDER'S REVIEWABILITY

■ ¶ 15 Resolution of the first question in today's controversy—whether the trial tribunal erred when it overlooked the binding effect of its April 2001 order extending TTD—requires that we address a rule of law not raised by either party[27]—that which governs *reviewability* of a compensation order. A worker's quest to receive compensation for an on-the-job injury is a statutory public-law proceeding, not a private dispute.[28] When resolving a public-law question, we are free to choose *sua sponte* the dispositive public-

law theory although the wrong one is advanced.[29]

■ ¶ 16 *Any order of the workers' compensation court which makes or denies an award or otherwise determines the rights of the parties is final and subject to immediate review.*[30] An aggrieved party must seek review at the first opportunity.[31] Failure to complain of error at that stage makes the decision final and impervious to any reconsideration.[32]

■ ¶ 17 *As a trial tribunal the WCC retains exclusive jurisdiction over its orders and awards only during the period prescribed by law for lodging a proceeding for review.*[33] One who is aggrieved by a decision of the trial judge has three available remedies. The award becomes final and conclusive upon all questions unless (a) within 20 days after a copy of the award has been sent to the parties, review is sought in the Su-

**26.** *Arrow Tool, supra* note 25, at ¶ 6 at 1122–23; *Neil Acquisition, supra* note 25 at ¶ 5 at 1103; *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084.

**27.** Claimant's certiorari brief may be said only to tangentially address the concept of an order's reviewability when it argues employer has not met its burden of proof to terminate the WWC April 2001 order.

**28.** *Amos v. Spiro Public Schools*, 2004 OK 4, ¶ 7, 85 P.3d 813 (citing *Special Indemnity Fund v. Reynolds*, 1948 OK 14, ¶ 5, 188 P.2d 841, 842); *National Gypsum Co. v. Brewster*, 1969 OK 185, ¶ 22, 461 P.2d 593, 596; *Reynolds v. Special Indemn. Fund*, 1986 OK 64, ¶ 14, 725 P.2d 1265, 1270.

**29.** *Amos, supra* note 28; *Davis v. B.F. Goodrich*, 1992 OK 14, ¶ 3, 826 P.2d 587, 592–93 (Opala, J., concurring)(citing *Reynolds, supra* note 28 at ¶ 14, at 1270); *Burdick v. Independent School Dist. No. 52 of Oklahoma City*, 1985 OK 49, ¶ 10, 702 P.2d 48, 54; *McCracken v. City of Lawton* 1982 OK 63, ¶ 9, 648 P.2d 18, 21 n. 11.

**30.** *Toney v. Parker Drilling Co.*, 1982 OK 17, 640 P.2d 1356. The teachings of *Toney* have survived a vast number of legislative changes. It is not critical to reviewability that the allowance or denial of an award put an end to the litigation. Any order, no matter how far removed from the ultimate termination of the claim, is reviewable if failure to appeal from it or to seek review of it will make the decision impervious to reconsideration. *Toney, supra* at ¶ 2 at 1357. See also *Hermetics Switch, Inc., and CNA Insurance, v. Sales*, 1982 OK 12, ¶ 4, 640 P.2d 963, 965.

**31.** *Toney, supra* note 30 at ¶ 2 at 1357. See also *Foster's Florist and Mega Life & Health Ins. v. Jackson*, 2000 OK 9, ¶ 6, 997 P.2d 843, 847 (citing *Hermetics, supra* note 30 at ¶ 4, at 965).

**32.** *Toney, supra* note 30, at ¶ 4 at 1357; *Foster's Florist, supra* note 31, at ¶ 10 at 847.

**33.** 85 O.S. Supp.1997 § 3.6(A) and (C), *infra*; *Ferguson v. Ferguson Motor Co.*, 1988 OK 137, ¶ 6, 766 P.2d 335, 336; *Snyder v. Smith Welding & Fabrication*, 1986 OK 35, ¶ 4, 746 P.2d 168, 169; *Sears, Roebuck & Co. v. Heller*, 1964 OK 132, ¶ 7, 401 P.2d 184, 186–87; *Jones v. Troup-Moore & Hall Drilling Co.*, 1961 OK 32, ¶ 11, 359 P.2d 577, 578; *Special Indemnity Fund v. Lewis*, 1948 OK 176, ¶ 5, 196 P.2d 684, 686; *Kincannon v. American Oil & Refining Co.*, 1927 OK 221, ¶ 6, 258 P. 741, 742–43, 126 Okl. 84; *Bedford-Carthage Stone Co. v. Industrial Commission*, 1926 OK 718, ¶ 5, 249 P. 706, 707–08, 119 Okl. 231.

The terms of 85 O.S. Supp.1997 § 3.6(A) and (C), the statute in effect at the time, provide: "A.* * *Either party feeling himself aggrieved by such order, decision or award shall, within ten (10) days, have the right to take an appeal from the order, decision or award of the Judge to the Workers' Compensation Court sitting en banc. * * *"
"* * *C. The order, decision or award of the Court shall be final and conclusive upon all questions within its jurisdiction between the parties, unless, within twenty (20) days after a copy of such order, decision or award has been sent by the Administrator to the parties affected, an action is commenced in the Supreme Court of the state, to review such order, decision or award. * * *"

preme Court,[34] or (b) appeal is brought to a three-judge panel of the WCC within 10 days after a copy of the award is sent [35] or (c) within the same 20 day statutory period during which review of the original award could have been sought, a trial judge's order vacating the award is issued upon due notice to the parties and after an adversary hearing.[36] *Upon failure of the parties to appeal or bring review an order becomes binding and conclusive.*

¶ 18 Here the court's April 2001 order made a continuing TTD award. It granted Yeatman up to 52 weeks of continuing TTD and deferred to a future resolution only a demand for overpayment credit. The order's perplexing wording—deferring to a future hearing the issue of TTD overpayment credit [37]—does not strip the rest of its terms of attributes of finality. It was subject to re-examination solely during the period prescribed for intra-court or appellate review. The employer here invoked none of the available remedies in response to the trial judge's award of continued TTD benefits. *The April 2001 award hence became final. It is subject solely to expiration, judicial extension or an earlier termination than upon the full length of 52 weeks. The WCC's September 2002 order here under review not only changed Yeatman's status from that of TTD to PPD. It, in essence, stripped of effectiveness the entire April 2001 order before its term expired or there was a judicial declaration either terminating or extending TTD benefits.*[38] In short, the trial judge impermissibly overlooked the force of the April 2001 order

34. *Supra* note 33.

35. *Supra* note 33.

36. *Supra* note 33.

37. We assume that the order's confusing syntax—which appears to reserve for a future hearing the issue of overpaid TTD (Record, p. 19)—was intended to make the order subject to the employer's opportunity to establish termination of TTD, hence exempting from computation any overpayment of benefits.

The record is devoid of a transcript of the hearing for continued TTD benefits. The facial terms of the April 2001 order hence prevail over anything that might serve to contradict its ruling.

38. Although the September 2002 order recognizes respondent's payment of TTD from 27 April

after her power to disturb its binding effect had ceased.

## IV.

## A CLAIMANT'S TEMPORARY TOTAL DISABILITY AWARD STANDS SUBJECT TO EXPIRATION OR TO JUDICIALLY IMPOSED SOONER TERMINATION

¶ 19 A TTD award, no longer subject to appellate re-examination, stands subject to *expiration, earlier judicial termination or to the tribunal's extension beyond the earlier period.* Oklahoma statutes provide a comprehensive scheme which governs the procedure for award, continuation, expiration and termination of TTD benefits. These enactments are to be read in conjunction with § 1.1(B) which places the burden of proof "on the party requesting benefits or relief . . ." [39] It is within this statutory ambit that we find resolution of the second issue—that of which party is to bear here the burden of proof for termination of TTD benefits granted by the April 2001 order.

### A.

### Extension and Expiration of Temporary Total Disability

¶ 20 Temporary total disability for which compensation may be allowed is defined as the healing period or that time following an accidental injury when an employee is totally incapacitated from work due to illness resulting from injury.[40] Section 22.2(b), relied on by respondent, deals with the establishment,

1998 to 29 December 2001, we must assume the April order was overlooked (or perhaps improvidently ignored) from the trial judge's failure to refer to the terms of that award in her later order.

39. For the terms of § 1.1(B) see *supra* note 22. Our extant jurisprudence has long placed on the employer the burden of proof for TTD compensation's termination. See *Tennison v. State Industrial Court,* 1967 OK 153, ¶ 12, 429 P.2d 959, 961 (citing *Van Ness Const. Co. v. Waltcher,* 1939 OK 368, ¶ 3, 95 P.2d 858, 860, 185 Okl. 657).

40. *Bodine v. L.A. King Corp.,* 1994 OK 22, ¶ 9, 869 P.2d 320, 322 (citing *Bama Pie, Inc. v. Roberts,* 1977 OK 100, ¶ 13, 565 P.2d 31, 34); *Ross v. Ross,* 1939 OK 202, ¶ 7, 89 P.2d 338, 340, 184 Okl. 626; *Smith v. Zweifel,* 1936 OK 174, ¶ 9, 54 P.2d 649, 651, 176 Okl. 113.

extension and expiration of TTD. Its terms provide that TTD is to be awarded during a defined period, not to exceed 52 weeks.[41] After compensation has been paid for one year, an *extension* of TTD may be granted for up to 52 weeks provided the "claimant has requested a review of the case at 42 weeks during each period involved." [42] Oklahoma's extant jurisprudence teaches there is no presumption that temporary total disability continues indefinitely.[43] Claimant must as a basis for temporary total compensation award adduce affirmative proof of a disability period.[44]

¶ 21 In short, a TTD award (not otherwise terminated, *infra* section B) continues for the duration of its length. It becomes inefficacious upon expiration of its term unless claimant timely requests a hearing and is granted extended compensation. It is the employee who bears the burden of proof when an extension of TTD benefits is requested. A claimant whose benefits have expired bears the burden of proving additional TTD benefits.

**41.** For the text of § 22.2(b) see *supra* note 8; *Bodine, supra* note 40 at ¶ 9 at 322; *Bama Pie, supra* note 40 at ¶ 13 at 34.

**42.** For the complete text of § 22.2(b), see *supra* note 8.

**43.** *Bodine, supra* note 40 at ¶ 9 at 322; *Bama Pie, supra* note 40 at ¶ 13 at 34; *Ross, supra* note 40 at ¶ 6 at 340; *Zweifel, supra* note 40 at ¶ 9 at 651.

**44.** *Bodine, supra* note 40 at ¶ 9 at 322; *Bama Pie, supra* note 40 at ¶ 13 at 34; *Ross, supra* note 40 at ¶ 6 at 340; *Zweifel, supra* note 40 at ¶ 9 at 651. Respondent urges these cases support its contention that temporary compensation does not continue indefinitely, and it is the claimant who must bear the burden of proof for each disability period benefits are sought. This proposition, though true, is not applicable to today's controversy. In each of the cited cases either the TTD order or the court's decision not to terminate compensation was attacked within the prescribed period. That is not so here. Yeatman has not sought continued TTD benefits—beyond those awarded by the April order—for which she must bear the burden of proving disability. Because the April order stands beyond review, respondent must seek the order's pre-expiration termination to arrest TTD liability before the order's expiration. The burden of proof hence rests on respondent.

**45.** The relevant portion of Rule 15(A)3 provides: "A. The employer may terminate temporary compensation whether begun voluntarily or by

## B.
### Termination of Temporary Total Disability

¶ 22 Rule 15 prescribes the procedure for how temporary compensation may be terminated. Subsection A addresses those situations where compensation may be terminated without a court order. The terms of subsection (A)3 [45]—the only provision that initially appears to have any possible relevance—allow for termination without a new court order when the claimant files a PPD evaluation report. Claimant requested a hearing on the issues of PPD and TTD on 6 May 2002,[46] but its filing has no impact on today's controversy because the terms of the April 2001 order expired shortly before that request was brought. More importantly, the employer filed its own motion to terminate TTD prior to the expiration of the April 2001 order. This alone alters the issue's procedural posture.

¶ 23 Where Rule 15(A) and (B) [47] do not apply, subsection (C) [48] is pertinent "[i]n all

order, without a new order of the Court in the event:
* * *3. The claimant files a permanent disability rating report; * * * "

**46.** Although Yeatman's motion does not include a PPD rating report, we assume that she was preparing for one in anticipation of her motion for a hearing on that issue.

**47.** Subsection B deals with termination based upon the report of a court-appointed independent medical examiner (IME). Although employer earlier requested the appointment of an IME, neither identification of an IME nor a requisite Form 5 was submitted with the motion to terminate. We hence do not view subsection B as applicable.

**48.** The text of subsection C provides:

"In all other events, . . . temporary compensation may be terminated only as follows:
1. The employer shall file its Form 11, Motion to Terminate Temporary Compensation, with the Court and mail a copy thereof to the employee. If the employers' request to terminate is based upon the written medical report or a Form 5 of a physician who indicates the employee has been released from the physician's professional care and is able to return to work, a copy of that report or of the Form 5 shall be mailed to opposing parties. The Form 11 shall contain a statement that the report or Form 5 was mailed to opposing parties.

other events, ... only as follows." [49] Its terms require an employer move for termination of TTD. The motion may be accompanied by a physician's report. An employee who objects to termination must request a hearing. *The burden of proof to terminate a continuing TTD award rests on the movant.*

### C.

### Yeatman's TTD Order Did Not Expire But Stands Subject to Respondent's Motion to Terminate Compensation

¶ 24 Respondent's certiorari arguments are inapposite and indicate its confusion concerning whether expiration or judicial termination is called for here. According to our calculations, employer stopped paying benefits at the 42nd week of awarded benefits under an order whose terms allow compensation for up to 52 weeks. Although it asserts TTD ceased by operation of law in accordance with § 22.2(b), it nonetheless filed a motion to terminate compensation. The reason for termination stated on the motion seems to address § 22.2(b) concerns dealing with expiration, not Rule 15(C) termination essentials. No cut-off date for TTD compensation is given in respondent's motion nor is there an explanation as to why 29 December 2001 (the date employer stopped paying TTD benefits) is critical to § 22.2(b) terms. The record contains no further motion by claimant for continuation of benefits beyond the scope of the April 2001 order. It does reflect that claimant timely responded to employer's motion to terminate compensation in accordance with Rule 15(C) provisions and moved for a hearing, objecting to respondent's motion to terminate TTD. Claimant later requested a hearing on the issues of PPD and TTD.

¶ 25 Benefits of temporary compensation, under an award no longer subject to review, do not *expire* by operation of law until the terms of an order have been satisfied. Here the April 2001 order extends benefits for up to 52 weeks. Because it is no longer subject to review, temporary compensation will not automatically cease before the 52 week period is completed. *The order is nevertheless subject to judicial termination.* Judicial termination process is the sole method *available to respondent* to arrest TTD payments prior to the order's expiration. Albeit for a mistaken reason, respondent filed a motion to terminate compensation *before* claimant's request for a hearing on the PPD issue.[50] *Because it is the party requesting relief and has not withdrawn its motion, the burden of proof rests on respondent.*

¶ 26 The trial tribunal impermissibly overlooked (or perhaps mistakenly regarded as having no legal impact on the issues before the trial tribunal) the April 2001 order as if it did not constitute an adjudicated liability. As of 20 March 2001 (the hearing date for claimant's request for continuing TTD) Yeatman's condition stood adjudicated as that of being in a healing period. The ruling was memorialized by the April 2001 order. If, upon remand, respondent is able to establish a pre-expiration cessation of TTD, and there is no contrary proof, the trial judge should allow credit for overpayment beginning at the healing period's termination. If, on the other hand, the proof fails to show the healing period came to an end before the order's

2. If the employee objects to the employer's termination of temporary compensation, the employee shall have fourteen (14) days from the date the employer's Form 11 is filed with the court to object to the termination of temporary compensation by the filing of a Form 9, Motion to Set for Trial ... * * * "

49. For the text of subsection C see *supra* note 48.

50. Because the trial tribunal neither passed on claimant's objection to the sufficiency of the employer's termination motion nor on the sufficiency of the rating physicians' reports, we refrain from expressing an opinion on these two matters. A reviewing court will not *initially resolve* issues which the tribunal of first instance failed to determine. *Jobe v. American Legion # 7,* 2001 OK 75, ¶ 15, 32 P.3d 860, 865 (citing *Salazar v. City of Okla. City,* 1999 OK 20, ¶ 15, 976 P.2d 1056, 1062; *Toxic Waste Impact Group, Inc. v. Leavitt,* 1994 OK 148, ¶ 7, 890 P.2d 906, 913; *Dyke v. St. Francis Hosp., Inc.,* 1993 OK 114, ¶ 11, 861 P.2d 295, 300 n. 13; *Teel v. Teel,* 1988 OK 151, ¶ 7, 766 P.2d 994, 999 n. 19; *American Ins. Ass'n v. Indus. Com'n,* 1987 OK 107, ¶¶ 7–8, 745 P.2d 737, 740 n. 15; *Sandpiper North Apts. v. American Nat. Bank,* 1984 OK 13, ¶¶ 28–29, 680 P.2d 983, 993; *Matter of Estate of Bartlett,* 1984 OK 9, ¶ 13, 680 P.2d 369, 377; *Davis v. Gwaltney,* 1955 OK 362, ¶ 13, 291 P.2d 820, 824).

Because today's ruling rectifies the procedural entanglements of the controversy, we need not address claimant's reliance on the *Thomas* principles.

expiration, the trial tribunal must then readdress claimant's motion to determine the period of claimed TTD. Upon readdressing respondent's TTD liability, the PPD award's payment schedule may need to be readjusted in order to make it conform to the trial tribunal's resolution of the other liability.

### IV.

### SUMMARY

¶ 27 Today's controversy must be resolved by invoking *sua sponte* the binding force of a prior TTD order. An order awarding temporary total disability is final. Failure timely to bring an intra-court appeal or to seek corrective relief on review makes that decision binding and conclusive upon the parties. Because employer invoked none of the available remedies for relief from the April 2001 order, it became final and its binding force is now unassailable insofar as it finds and concludes that claimant has a right to TTD for 52 weeks beginning 20 March 2001 and ending on that condition's earlier termination.

¶ 28 An award of temporary total disability, no longer subject to re-examination by appeal or review, is subject to expiration, judicial extension or earlier termination. Employer sought termination prior to the time the order's terms expired by operation of law. The burden to prove claimant's expiration of her healing period falls upon the moving party in accordance with § 1.1(B).

¶ 29 On certiorari previously granted, the Court of Civil Appeals' opinion and the Workers' Compensation Court's order—the latter only insofar as it determines temporary total disability and overpayment credit—are vacated; the claim is remanded to the trial tribunal with directions to readdress in a post-remand proceeding the rights conferred upon claimant by its earlier order whose binding force was impermissibly overlooked.

¶ 30 HODGES, LAVENDER, KAUGER, BOUDREAU and EDMONDSON, JJ., concur.

¶ 31 WATT, C.J., concurs in result.

¶ 32 HARGRAVE and WINCHESTER, JJ., dissent.

