2004 OK 40

**Deacon COOPER, Plaintiff/Appellant,**

v.

**Glynn BOOHER, Warden, John Lilley Correctional Center, Defendant/Appellee.**

No. 98,447.

Supreme Court of Oklahoma.

June 1, 2004.

Deacon Cooper, pro se.

Richard W. Kirby, General Counsel, and Ronald A. Anderson, Assistant General Counsel, Oklahoma Department of Corrections, Oklahoma City, OK, for Defendant/Appellee.

BOUDREAU, J.

¶1 Deacon Cooper (Inmate), an inmate at John Lilley Correctional Center in Boley, Oklahoma, tested positive for use of marijuana and received administrative discipline. He appealed unsuccessfully to Glynn Booher (Warden) and then to the Director of the Oklahoma Department of Corrections (DOC), arguing that the drug test was administered in a manner not in accordance with DOC policy and not in accordance with the manufacturer's recommendations. Inmate then filed what has been called in the papers before us a petition for writ of mandamus in district court asking the court to command prison officials to retest him. Warden responded with a motion to dismiss the petition and a motion for sanctions.[1] In a Journal Entry entered October 18, 2002, the district court dismissed Inmate's petition, granted Warden's motion for sanctions and imposed sanctions on Inmate in the amount of $103.50, the costs of the action. Inmate appealed.

¶2 The Court of Civil Appeals (COCA) affirmed the dismissal of the petition but reversed the sanction order. COCA held as a matter of first impression that a party who wishes to move for sanctions under 57 O.S. 2002 Supp. § 566 (hereinafter, § 566) must comply with the safe harbor provision that is found in 12 O.S.2001 § 2011(C)(1)(a) (hereinafter, § 2011), despite the fact that § 566 does not itself contain any such requirement.[2] COCA reversed the sanction award because Warden had not complied with the safe harbor provision. Warden sought certiorari review of the portion of COCA's opinion that reversed the sanction order. Inmate did not seek certiorari review of the portion of COCA's opinion that affirmed the dismissal of the petition.

ISSUE

¶3 The first impression issue on certiorari is: In an action commenced by an inmate, must a defendant who wishes to move for sanctions under § 566 comply with

---

1. The appellate record is incomplete. It has some attributes of a record on accelerated appeal under Okla. Sup.Ct. R. 1.36, but it lacks Inmate's petition and Warden's motions. Consistent with Rule 1.36, the parties did not file appellate briefs. Because of the sparse record, we glean the factual and procedural history from the district court docket sheet, Petition in Error, Response to Petition in Error and Petition for Writ of Certiorari.

2. Both Section 566 and Section 2011 allow either the court or a party to initiate the sanction process. In this case, Warden initiated the process by filing a motion for sanctions. Accordingly, in this opinion we will discuss these statutes only in the context of party-initiated sanctions, not in the context of court-initiated sanctions.

the safe harbor provision that is found in § 2011. We answer "no".[3]

## STANDARD OF REVIEW

■■■ ¶ 4 Because the issue is one of statutory construction, our review is *de novo*. *Arrow Tool & Gauge v. Mead*, 2000 OK 86, ¶ 6, 16 P.3d 1120, 1123. In a *de novo* review we claim plenary, independent and non-deferential authority to examine a trial court's legal rulings. *Manley v. Brown*, 1999 OK 79, ¶ 22 n. 30, 989 P.2d 448, 456 n. 30.

## ANALYSIS

■■■ ¶ 5 Fundamental to statutory construction is to ascertain and give effect to legislative intent. *City of Durant v. Cicio*, 2002 OK 52, ¶ 13, 50 P.3d 218, 221. We must presume the Legislature expressed its intent in a statute and that the Legislature intended what it expressed. *TXO Production Corp. v. Oklahoma Corp. Comm'n*, 1992 OK 39, 829 P.2d 964, 969. "[W]here a statute's language is plain and unambiguous, and the meaning clear and unmistakable, no justification exists for the use of interpretative devices to fabricate a different meaning." *Keating v. Edmondson*, 2001 OK 110, ¶ 15, 37 P.3d 882, 888.

■■ ¶ 6 We first address § 2011. Section 2011 was amended in 1994 to add a special notice provision, commonly referred to as a safe harbor provision, that applies to a party who wishes to file a sanction motion pursuant to § 2011(C)(1)(a).[4] It provides in pertinent part:

C. SANCTIONS

1. HOW INITIATED.

a. *By Motion.* A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subsection B of this section. It shall be served as provided in Section 2005 of this title, but shall not be filed with or presented to the court unless, within twenty-one (21) days after service of the motion or such other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

¶ 7 Under the plain meaning of the words, prior to filing a sanction motion pursuant to § 2011(C)(1)(a) the movant must serve the motion on the offending party and wait at least twenty-one days. Only if the offending party does not withdraw or appropriately

---

**3.** The dissent suggests that this issue cannot be adequately addressed without deciding whether an inconsistent procedural approach for § 2011 and for § 566 offends the state's constitutional prohibition against disuniform procedure and the equal protection clause of the 14th Amendment of the U.S. Constitution. We disagree. In his petition in error, Cooper identified two issues for appeal. He contended (1) that his petition was not frivolous and (2) that there was not enough money in his prison account to pay the sanctions imposed. He raised no constitutional issue in his petition in error. In reversing the sanction award, the Court of Civil Appeal's opinion held, as a matter of statutory construction, that § 566 is an extension of § 2011, but applicable to a specific category of litigant, an inmate in a penal institution. In its opinion, the intermediate appeals court did not rest its holding on any provision in our state or federal constitutions.

Ordinarily, where the record clearly shows that the question of the constitutionality of an act was not presented to the trial court, and no reference to the constitutionality of an act appears on the record on appeal, such question will not be considered on appeal by the Supreme Court. *Springfield Fire & Marine Ins. Co. v. Biggs*, 1956 OK 114, 295 P.2d 790; *Garman v.*

*Myers*, 1938 OK 406, 80 P.2d 624. Due process claims and public law controversies are sometimes an exception to the requirement that constitutional issues, or any issues for that matter, must be raised in the lower court. However, the fact that a dispute may be characterized as a public law controversy does not compel this Court to identify and decide all conceivable constitutional claims. For instance, we have held that a workers' quest to receive compensation for an on the job injury is a statutory public law proceeding, not a private dispute. *Yeatman v. Northern Oklahoma Resource Center*, 2004 OK 27, 89 P.3d 1095, (2004). Yet, in *Johnson v. City of Woodward*, 2001 OK 85, 38 P.3d 218, we refused to consider an equal protection challenge (the same challenge the dissent urges we address here) by firefighters attacking the constitutionality of a presumption that they contended placed them in a special class.

**4.** Section 2011(C)(1)(a) is virtually identical to its federal counterpart, Rule 11 of the Federal Rules of Civil Procedure. Rule 11 was amended to add a safe harbor provision effective December 1, 1993. The corresponding amendment to § 2011 became effective September 1, 1994. 1994 Okla. Sess. Laws ch. 343 § 11.

correct the challenged paper, claim, defense, contention, allegation, or denial within twenty-one days after service may the movant file the motion. We have said that the purpose of the sanction provision in § 2011 is to discourage pleadings, motions or other papers that are frivolous or are filed for an improper purpose such as delay. *State ex rel. Tal v. City of Oklahoma City,* 2002 OK 97, ¶ 17, 61 P.3d 234, 244.

¶ 8 We now turn to § 566. This statute was last amended effective July 1, 2002.[5] Among other things, the amendment made § 566 applicable to any action (instead of any civil action) filed by any inmate (instead of any inmate in a penal institution appearing *pro se*) against any person, party or entity (in addition to the state, the Department of Corrections, another state agency, or political subdivision). Section 566, as amended in 2002, provides in pertinent part:

A. Any action initiated against any person, party or entity, the state, the Department of Corrections, another state agency, or political subdivision, or an original action in an appellate court, or an appeal of an action whether or not the plaintiff was represented in the district court, by an inmate may be:

* * *

2. Dismissed with prejudice ... on a motion of the defendant, if the court is satisfied that the action is frivolous or malicious.

* * *

C. If the court determines before or at trial that one or more of the causes of action are frivolous or malicious, any one or more of the following sanctions may be imposed:

* * *

2. Court costs not to exceed Five Hundred Dollars ($500.00) per cause of action;

■ ¶ 9 We see no ambiguity in this language and therefore we must apply the plain meaning of the words. *Keating v. Edmondson, supra.* Under the plain meaning of the words, § 566 authorizes the court to impose sanctions on an inmate who initiates a frivolous or malicious action; § 566 does not require the defendant to comply with any safe harbor provision like that found in § 2011.

¶ 10 Our conclusion that § 566 does not incorporate the safe harbor provision of § 2011 is reinforced by the fact that the Legislature amended § 566 in 2002. At the time of the 2002 amendment to § 566, the safe harbor provision had already been in effect in § 2011 for eight years. If the Legislature intended to add a safe harbor provision to § 566, it could have used the same language it used in its 1994 amendment to § 2011. *See, e.g., Ind. School Dist. # I–20 of Muskogee County v. Oklahoma St. Dept. of Education,* 2003 OK 18, ¶ 16, 65 P.3d 612, 619. The intent of the Legislature to keep the two statutes separate is clear. Being fully aware of the burden of frivolous and malicious litigation by inmates, the Legislature chose not to incorporate the safe harbor provision of § 2011 into § 566.

## CONCLUSION

¶ 11 We hold that the safe harbor provision that is applicable to sanction motions filed pursuant to 12 O.S.2001 § 2011 does not apply to sanction motions filed pursuant to 57 O.S.2002 Supp. § 566. We vacate the portion of the opinion of the Court of Civil Appeals that reversed the trial court's sanction order and we affirm the trial court's sanction order. Since no party sought certiorari with respect to any other portion of the opinion of the Court of Civil Appeals, we leave undisturbed the balance of that opinion.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED IN PART; TRIAL COURT JUDGMENT AFFIRMED.**

WATT, C.J., and HODGES, LAVENDER, HARGRAVE, BOUDREAU, WINCHESTER, and EDMONDSON, JJ., concur.

OPALA, V.C.J., dissents and writes separately.

KAUGER, J., concurs in part and dissents in part (joins OPALA, V.C.J.).

---

5. 2002 Okla. Sess. Laws ch. 402 § 8.

OPALA, V.C.J., with whom KAUGER, J., joins, dissenting.

¶ 1 The court vacates today the Court of Civil Appeals' (COCA) opinion and affirms the trial court's sanction order, declaring that the safe-harbor clause in the provisions of 12 O.S.2001 § 2011(c)(1)(a) [1] was not intended to be included in the terms of 57 O.S.2002 Supp. § 566.[2] Because the court's pronouncement fails to reach the *dispositive issues* in this public-law controversy,[3] I dissent and suggest for the court's consideration my own analysis of the critical issues to be resolved.

¶ 2 In this controversy the court is not only entirely free, but also bears the duty, *to make its own formulation of the issues that must be decided.* Two issues, both having a constitutional dimension, appear absolutely necessary for today's pronouncement. One of the two is whether an inconsistent procedural approach for § 2011 and for § 566 offends the state constitution's prohibition against disuniform procedure; the other is whether singling out prisoners for application of a different process in imposing court sanctions for litigation-related misconduct offends the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Today's opinion addresses neither of these two questions.

## I.

### DOES DICHOTOMIZING THE APPLICABLE NORMS OF SANCTIONING PROCEDURE INTO THOSE GENERALLY PRESCRIBED BY § 2011 AND THOSE OF § 566 WHICH APPLIES SOLELY TO PRISONERS OFFEND THE OKLAHOMA CONSTITUTION'S PROHIBITION AGAINST DISUNIFORM COURT PROCEDURE?

¶ 3 The terms of Art. 5, § 46, Okl. Const.,[4] command that court procedure be symmetrical and apply across the board.[5] The terms

---

1. The pertinent terms of 12 O.S.2001 § 2011(C)(1)(a) are:

    a. *By Motion.* A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subsection B of this section. It shall be served as provided in Section 2005 of this title, but shall not be filed with or presented to the courts unless, within twenty-one (21) days after service of the motion or such other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

2. The pertinent terms of 57 O.S.2002 Supp. § 566 are:

    A. Any action initiated against any person, party or entity, the state, the Department of Corrections, another state agency, or political subdivision, or an original action in appellate court, or an appeal of an action whether or not the plaintiff was represented in the district court, by an inmate may be:
    * * *
    2. Dismissed with prejudice ... on a motion of the defendant, if the court is satisfied that the action is frivolous or malicious.
    * * *
    C. If the court determines before or at trial that one or more of the causes of action are frivolous or malicious, any one or more of the following sanctions may be imposed:
    * * *
    2. Court costs not to exceed Five Hundred Dollars ($500.00) per cause of action;

3. The distinction between public and private law is well recognized in the Anglo–American legal system. Blackstone acknowledged the distinctness of these two bodies of law. Blackstone's Commentaries of The Laws of England, Vol. III, p. 1 [private wrongs], Vol. IV, p. 1 [public wrongs] (Wendell's ed. 1859). He defined a *private* wrong as an infringement or privation of the *private* or *civil* rights belonging to individuals, considered merely as individuals, and therefore termed civil injuries, while public wrongs were described as a breach and violation of public rights and duties affecting the entire community, considered as a community. Notwithstanding Blackstone's late eighteenth-century teachings, the term "public law" is not commonly used in the United States. Cappalli, *The American Common Law Method* (1997), pg. 177.

4. The pertinent terms of Art. 5, § 46, Okl. Const., are:

    The *Legislature shall not*, except as otherwise provided in this Constitution, *pass any local or special law authorizing:* * 4 *
    *Regulating the practice or jurisdiction of ...* in judicial proceedings or inquiry before the courts ... or other tribunals ...
    (emphasis supplied).

5. *Brown v. Ford*, 1995 OK 101, ¶ 7, 905 P.2d 223, 228; *Simpson v. Dixon*, 1993 OK 71, ¶ 15, 853 P.2d 176, 183; *Tate v. Browning–Ferris, Inc.*, 192 OK 72, ¶ 18, 833 P.2d 1218, 1229; *Reynolds v. Porter*, 1988 OK 88, ¶¶ 13–19, 760 P.2d 816, 822; *Johnson v. District Court of Oklahoma County*,

of § 46 mandate in absolute terms statewide procedural uniformity for an entire class of similarly situated persons or things.[6] Its relevant terms expressly prohibit the legislature from regulating court procedure by disuniform rules.[7] Although directed to the legislature, the terms of § 46 are equally binding on the courts.[8] This court's own jurisprudence, no less than the legislature's enactments, must faithfully conform to the fundamental law's prohibition against disuniform laws on all subjects prohibited in § 46.

## II.

## DOES SINGLING OUT PRISONERS FOR DIFFERENT PROCEDURAL TREATMENT WHEN THEY ARE PROCEEDED AGAINST FOR IMPOSITION OF COURT SANCTIONS OFFEND THE XIVth AMENDMENT'S EQUAL PROTECTION CLAUSE?

¶ 4 The XIVth Amendment to the Constitution of the United States [9] has been a part of this Nation's fundamental law since 1868. It has served as a basis for articulated national public policy for all the states.[10] The Supreme Court's XIVth Amendment jurisprudence constitutes law that is enforceable against all the states.[11]

¶ 5 The terms of the XIVth Amendment guarantee that all similarly situated persons receive the same treatment. Here, the court has failed to inquire into whether, in the context of Oklahoma's sanctioning process, it may, without offending the Equal Protection Clause, apply to a prisoner procedural norms that are markedly different from those which stand accorded to similarly situated persons at large. A legislative classification which, without any rational basis, sets apart a subclass for different treatment may be offensive to the Equal Protection Clause.[12] If a legislative classification is declared to be impermissibly narrow, it is subject to judicial condemnation as "underinclusive." [13]

¶ 6 In *Mehdipour*[14] the trial court dismissed a prisoner's lawsuit for failure to pay

1987 OK 47, ¶ 2, 738 P.2d 151, 154 (Opala, J., concurring). Special laws are those which single out less than an entire class of similarly affected persons or things for different treatment. If a rule of law is special, § 46 absolutely and unequivocally prohibits its passage as law. *Reynolds* at ¶¶ 13–21, 821–824.

6. See *Johnson v. Tony's Town Mister Quik*, 1996 OK 138, ¶ 5, 915 P.2d 355, 355, 357–358; *Reynolds, supra* note 5 at 822; *Maule v. Independent School Dist. No. 9*, 1985 OK 110, ¶ 12, 714 P.2d 198, 203–204.

7. *Maule, supra* note 6 at 203–204; *Reynolds, supra* note 5 at 822; *Great Plains Federal S & L Assn. v. Dabney*, 1993 OK 4, ¶ 12, 846 P.2d 1088, 1095–1096 (Opala, J., concurring). "Fundamental fairness cannot be afforded except within a framework of orderly procedure." *Joiner v. Brown*, 1996 OK 112, ¶ 6, 925 P.2d 888, 890, citing *Pryse Monument Company v. District Court of Kay County*, 1979 OK 71, 595 P.2d 435, 438. "... It is procedure that spells much of the difference between rule by law and rule by whim or caprice. Steadfast adherence to the strict procedural safeguards is our main assurance that there will be equal justice under law." *Joiner, supra* note 7 at 890, quoting from Joint *Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 179, 71 S.Ct. 624, 652, 95 L.Ed. 817 (1951) (Douglas, J., concurring).

8. *Reynolds, supra* note 5 at 822.

9. The pertinent terms of § 1 of the XIVth Amendment to the United States Constitution are:

"... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; *nor shall any State* deprive any person of life, liberty, or property, without due process of law; nor *deny to any person* within its jurisdiction the *equal protection of the laws.*"
(emphasis supplied).

10. *Clinton v. State ex rel. Logan County Election Bd.*, 2001 OK 52, ¶ 6, 29 P.3d 543, 548 (Opala, J., concurring).

11. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090 (1961).

12. *Baxstrom v. Herold*, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966); *Williams v. Illinois*, 399 U.S. 235, 240, 90 S.Ct. 2018, 2022, 26 L.Ed.2d 586 (1970); *Humphrey v. Cady*, 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972). These cases identify Equal Protection jurisprudence that does not allow placing prisoners and persons at large into two separate classes.

13. *Orr v. Orr*, 440 U.S. 268, 272, 99 S.Ct. 1102, 1108, 59 L.Ed.2d 306 (1979); *Stanton v. Stanton*, 421 U.S. 7, 13–14, 95 S.Ct. 1373, 1377, 43 L.Ed.2d 688 (1975); see also *Wilson v. Foster*, 1979 OK 45, 595 P.2d 1329, 1332.

14. *Mehdipour v. State ex rel. Department of Corrections*, 2004 OK 19, ¶ 22, 90 P.3d 546.

a filing fee prescribed by § 566. On at least three prior occasions the prisoner filed lawsuits which were dismissed either as frivolous or for failure to state a claim. On certiorari, this court held that because the provisions of the pertinent legislation did not implicate any fundamental rights and were rationally related to a legitimate state interest in deterring frivolous prisoner lawsuits, the statute imposing court costs did not offend due process. The enactment hence was declared free of constitutional taint under both the Federal and State constitutions. I did not give *Mehdipour* my unqualified concurrence. This is so because there the court resolved a federal constitutional issue that was neither tendered for its testing nor was necessary for the decision. Resolving the two fundamental-law questions in this case is critical to deciding the constitutional validity of Oklahoma's dichotomous regime of procedure for sanctioning the same or like litigation-related abuse or misconduct.

¶ 7 Because the court today *neither* resolves (1) the impact of the uniformity-of-procedure mandate imposed by § 46, *nor* (2) deals with a prisoner's federal constitutional claim to receiving treatment that is not unequal to that accorded persons at large, I recede from its opinion.

## III.

### THE DISSENT'S RESPONSE TO THE COURT'S CRITIQUE

¶ 8 In response to the dissent the court suggests that because in *Woodward*[15] the court did not reach the constitutional issue urged upon it, it should not do so here. *Woodward* does not raise an impediment to resolving the issues I tender by the dissent. **The court has a clear and absolute duty to determine all issues dispositive of a public-law controversy.** In *Woodward* the court follows that very mandate by saying that neither its opinion there nor in *Northwest Datsun*[16] presents the "public interest and welfare required ... to entertain the equal protection challenge on appeal ...". Today's refusal to resolve what the dissent counsels

will give the winner **no more than** Pyrrhic victory to be followed by utter chaos in the courthouses for the ensuing years of time-consuming litigation.

---

**15.** *Johnson v. City of Woodward,* 2001 OK 85, ¶ 21, 38 P.3d 218, 226–227.

**16.** *Northwest Datsun v. Oklahoma Motor Vehicle Com'n,* 1987 OK 31, ¶ 16, 736 P.2d 516, 520.